E. RAUH & SONS FERTILIZER CO. *v.* ADKINS, ET AL.

[No. 18,714. Filed October 19, 1955. Rehearing denied November 17, 1955. Transfer denied February 28, 1956.]

*Joseph J. Hemphling,* of South Bend, for appellant.

*Kizer & Neu,* of Plymouth, for appellees.

KENDALL, P. J.—Appellant appeals from an award of the Full Industrial Board in which the dependents of Alfred Adkins were awarded compensation for death benefits under the Indiana Workmen's Compensation Act, §40-1202, Burns' Stat., 1952 Replacement.

On April 27, 1953, Alfred Adkins, an employee of appellant company, was engaged in work referred to as a bag-man and sweeping fertilizer on the company's floor. At the time of his death, he had pushed a "skid", weighing between one hundred and one hundred and fifty pounds, from three to five feet. He had stepped back from the "skid" approximately two feet, slumped to the floor and died. The immediate cause of death, as pronounced by Dr. Connell, was an acute cardiac episode.

Case was first heard by one member of the Board who made a finding in favor of appellant on the basis that the death of Mr. Adkins was not the proximate result of an injury by accident arising out of and in the course of his employment. Upon review by the Full Board, the award of the Single Member was reversed and an award was made in favor of the dependents of the deceased, which award in part is as follows:

" . . . that on said date Alfred Adkins sustained personal injuries by reason of an accident arising out of and in the course of his employment with the defendant which said accidental injuries resulted in his death on the same day; that his death was due to aggravation of a previous heart condition caused by exertion in the performance of his duties as an employe of the defendant, causing his death by coronary occlusion; . . ."

On appeal, appellant argues; first, that the death caused by an acute cardiac episode is not "by accident arising out of and in the course of employment", as the evidence does not disclose a causal and proximate relation between decedent's fatal injury and employment and when the evidence does not establish that decedent had a prior existing disease which hastened death; secondly, that the record is void of evidence of the Board's finding that "decedent's death was due to aggravation of a previous heart condition caused by exertion in the performance of his duties as an employe of appellant, causing his death by coronary occlusion".

Assignment of errors are that the award of the Full Board is contrary to law and is not sustained by sufficient evidence. This places in issue the sufficiency of the evidence to support the award.

Decedent was a man five feet, seven inches tall, fifty-eight years of age and weighing between one hundred ninety and two hundred pounds. He was described as being thick, chunky-like and fleshy. The "skid," which decedent had pushed from three to five feet and from which he had stepped back from approximately two feet before slumping, is described as being what sacked fertilizer is loaded upon from the mill. It has four legs ten inches high, is approximately five feet long, between twenty-four and thirty-four inches wide and is constructed out of wood and scrap iron. There are two pipes sticking up from the platform of the "skid" on one end approximately five feet wide which are made of iron. There was evidence that it required force to keep a "skid" moving; however, there were witnesses who testified that they had no trouble in pushing the "skids"; that "the skids were more

easily pushed when there was fertilizer on the floor; that no rollers were attached to the legs of the skids".

The deceased had worked for appellant from three to four weeks and had not missed any working days. The evidence revealed that after decedent slumped to the floor, no blood stains or marks were visible at the time. No autopsy was performed. He was dead when the physician arrived a short time thereafter. Decedent's color was described as being a cyanosis gray, a purplish-gray color, the color being associated with an anoxemia. Usually when the "skids" were loaded with fertilizer they were carried away on a little tractor. On the day in question, the little tractor was late and the deceased just pushed one three to five feet. One witness saw deceased just prior to pushing the "skid" carrying empty bags, which was more or less his job, up to the fertilizer shoot.

In determining the question presented, since the finding of the Board was in favor of appellees, we are required to consider only the evidence most favorable to them, the appellees, together with all inferences reasonably deducible therefrom and favorable to their cause.

It is apparent from the evidence as given by appellee's doctor, that the decedent's death, in the doctor's opinion, was the result of a coronary occlusion and that a coronary occlusion could be brought about by exertion to one suffering from a cardiac condition, and that the decedent had a condition of an abnormal cardiac prior to the time that he pushed the "skid". If there was an injury and it concurred with the condition described by the doctor in hastening the death of the decedent, then the right to an award would exist.

One of the questions for our decision is whether it may be said from the evidence that the deceased suf-

fered an injury by accident arising out of his employment which concurred with his ailment as described by the doctor as an additional agency or which rendered the latter effective to a fatal end. That is, was decedent's death caused solely by an acute cardiac episode which progressed naturally or did he suffer an accident out of his employment which concurred with his disease to produce the tragedy ending his life.

In the case of *In re Bowers et al.* (1917), 65 Ind. App. 128, 116 N. E. 842, approved in the case of *Indian Creek Coal, etc. Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519, the court said:

" 'The courts, consistent with the theory of workmen's compensation acts, hold with practical uniformity that, where an employe afflicted with disease receives a personal injury under such circumstances as that he might have appealed to the act for relief on account of the injury had there been no disease involved, but the disease as it in fact exists is by the injury materially aggravated or accelerated, resulting in disability or death earlier than would have otherwise occurred, and the disability or death does not result from the disease alone progressing naturally as it would have done under ordinary conditions, but the injury, aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the compensation acts.' "

The meaning assigned to the word, "accident", as used in compensation acts must be distinguished from its meaning as used in accident insurance cases. The word, "accident", as used in the Act has been construed by this and the Supreme Court many times, and has been held to be used in its popular sense and means any mishap or untoward event not expected or designed. Authorities agree that "by accident arising out of and in the course of employment"

should be liberally construed in harmony with the humane purposes of the Act.

The question as to whether or not the death of the decedent was the result of an accident arising out of his employment was a question of fact for the Industrial Board, which in this case, they found to exist, and its findings thereon, when supported by some evidence of probative value, will not be disturbed on appeal. For a full and detailed discussion on this subject, see *United States Steel Corporation* v. *Douglas* (1955), 125 Ind. App. 212, 123 N. E. 2d 899.

In the instant case there was no evidence that decedent or anyone else knew that he was afflicted with any form of heart disorder. While in his native state of Virginia, he had done mining work.

It is, therefore, apparent that the mishap and the untoward occurrence which happened was not foreseen or expected. Injury to be accidental need not be created by wound of external violence.

The appellant urges that there is no evidence that decedent's death was due to aggravation of a previous heart condition caused by exertion in the performance of his duties which caused the coronary occlusion. In a hypothetical question propounded to appellee's doctor, which question contained the physical facts and circumstances surrounding the occurrence at the time of pushing the "skid", the doctor was asked to state whether in his opinion the act of his pushing the "skid" in any way contributed to the decedent's coronary occlusion, to which the doctor answered: "It is a known fact that any sudden exertion can precipitate such an attack. I can't say that it will cause it because there must be a pre-existing condition there but it can precipitate the actual cardiac abnormality is a better word

rather than getting so specific as coronary occlusion. Coronary occlusion is one of the things it may cause— it may cause a sudden cardiac stand-still in which the heart just stops functioning. It may cause cardiac fibrillations, that is a condition in which each of the muscle bundles of the heart suddenly become disassociated and function under their own po(w)er instead of all functioning as a unit. In other words, you get a heart if viewed at that moment, would appear as a bag of squirming worms. It can cause any of those conditions, assuming that there is a pre-existing coronary disease in the heart."

The doctor was further interrogated as to whether Alfred Adkins had a cardiac condition prior to the time of the occurrence complained of, to which the doctor replied: "I do not believe I know the appearance of the man at the time he was seen following his death. So, if you assume that he gave the appearance of that type of death, *then it would follow that he must have. had a pre-existing condition.*" (Our emphasis).

This question was asked appellee's doctor:

"Q. Assume that while in the act of pushing this skid he suddenly slumped and fell and became an ashen bluish color and had no pulse that could be discovered and that it was by another physician diagnosed as a cardiac episode or acute cardiac episode.

"A. Assuming there was no evidence of accidental death then a conclusion would be from these findings that it was a cardiac death.

"Q. And that the person had a condition of an abnormal cardiac condition prior to the time he was pushing this skid?

"A. *Yes.*" (Our emphasis)

In addition to the medical testimony afforded the Board, the evidence further revealed that it required force to start a "skid" in action and required "pretty

much force" to keep them moving; that to start one you have to shove real hard; that they "generally ain't pushed"; that ordinarily they are loaded on tractors to be moved around. One of the employees testified in reference to the decedent pushing the "skid", "I would say he pushed it about five feet, the length of the skid. As he pushed it into the bagger, he took a step back and fell over".

Another employee testified, "He went over and got the skid and pushed it in. He started to shove it to the machine and did not get it all the way there."

There was evidence by Dr. Connell that certainly his heart did not pump any blood after he started to fall.

Considering all the physical facts as detailed by the evidence, the man's age, height, weight, the fact that it took energy to get a "skid" started moving, that after he put the "skid" in action it only moved a short distance, not over five feet, when decedent stepped back, slumped over and died immediately, the medical testimony of appellee's doctor that his death was caused by a coronary occlusion and that a coronary occlusion can be brought about by exertion to one suffering a cardiac condition of an abnormal nature, all supports the findings of the Industrial Board and the same constitutes competent evidence of probative value from which the Board had a right to draw inferences that decedent's death was due to aggravation of a previous heart condition. The appellant did not present any medical testimony.

Our courts hold that the Workmen's Compensation Law is grounded in justice and should be liberally construed to accomplish the end for which it was enacted. *Pollock* v. *Studebaker Corporation* (1952), 230 Ind. 622, 105 N. E. 2d 513. It must

be kept in mind that the Industrial Board is the sole fact-finding body in a proceeding of this kind. On appeal this court cannot weigh the evidence heard by the Board and determine for whom it preponderates. *Blue Ribbon Pie Kitchens* v. *Long* (1952), 230 Ind. 257, 103 N. E. 2d 205; *Vonnegut Hardware Co.* v. *Rose* (1918), 68 Ind. App. 385, 120 N. E. 608; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399.

The Industrial Board may not only weigh the evidence but may also draw reasonable inferences from such facts as it seems established thereby. When the Industrial Board has discharged its duty in this regard and reached a conclusion as to the ultimate facts which have or have not been established and embodied such conclusions in a finding of fact as required by statute, this court must accept the facts so found as true, unless the evidence is of such conclusive character as to force a contrary conclusion. In order to reach a contrary conclusion, we may not weigh the evidence nor disregard any reasonable inference which the Board may have drawn from the facts which the evidence tends to establish. *George* v. *Interstate Metal Products* (1955), 125 Ind. App. 406, 126 N. E. 2d 258.

We therefore cannot say that the evidence upon which the Board acted was without probative value and that the quantum of evidence was so meager as to show that the findings do not rest upon a rational basis.

We have examined each of the assignment of errors and find that the award is not contrary to law and is sustained by sufficient evidence.

Award affirmed.

NOTE.—Reported in 129 N. E. 2d 358.