CAMPBELL *v.* KISER CORPORATION & DIECAST, INC.

[No. 20,339. Filed July 7, 1965.]

*Archie Lapin* and *Donald D. Chiappetta,* of counsel, of Muncie, for appellant.

*Richard W. Guthrie* and *Murray, Stewart, Irwin & Gilliom,* of counsel, of Indianapolis, for appellee.

MOTE, J.—Appellant, Dorothy J. Campbell, filed her application, Industrial Board Form No. 9, seeking compensation for permanent impairment resulting from an accident arising out of and in the course of her employment with appellee, Kiser Corporation & Diecast, Inc. Appellant in said application alleged that "the diecast machine behind employee (appellant) erupted and sprayed hot lead all over back part of employee," causing appellant to receive extensive burns and scars on her back, buttocks, left arm, lower legs

and right thigh, thereby causing an extreme nervous condition. The medical expense involved is shown to have been paid.

The application of appellant was heard by a Single Member of the Industrial Board, after which there was a finding and negative award against appellant.

Appellant then filed her application for review before the Full Industrial Board and after a hearing thereby, the negative award of the Single Hearing Member was sustained.

The significant parts of the findings and negative award of the Full Industrial Board are as follows:

"The Full Industrial Board of Indiana having heard the arguments of counsel and having reviewed all the evidence in said cause and being duly advised in the premises therein, now finds:

"That on September 7, 1961, the plaintiff was an employee of the defendant at an average weekly wage of $46.00; that on said date, she sustained personal injuries by reason of an accident arising out of and in the course of her employment with the defendant of which said accidental injury the defendant had knowledge and did furnish and pay for the statutory medical attention and supplies; that the said accidental injury consisted of molten zinc burns over her back, buttocks, arms, lower legs and right thigh; that as a result of the said accidental injury the plaintiff was not temporarily totally disabled for more than seven (7) days.

"It is further found that the plaintiff's condition has now reached a permanent and quiescent state and as a result of the said accidental injury she has sustained no permanent partial impairment.

"It is further found that the plaintiff has sustained no permanent disfigurement which may impair her future usefulness or opportunities.

"Said Full Industrial Board of Indiana now finds for the defendant and against the plaintiff on

plaintiff's Form #9 application for the adjustment of claim for compensation filed on January 11, 1963.

## AWARD

"IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that the plaintiff shall take nothing by her Form #9 application, filed on January 11, 1963, and that she shall pay the costs, if any, taxed in said cause.

Dated this 8th day of January, 1965."

Appellant contends that the primary inquiry presented by the issues before the Single Member and, subsequently, the Full Industrial Board, was whether appellant's injuries have caused permanent scars and disfigurement, pain and discomfort, and a nervous condition which have impaired her future usefulness and opportunities to the extent that she suffers permanent partial impairment.

Appellant further contends that the record indicates that said Board considered only the disfigurement or physical aspect of appellant's condition and neglected to consider the alleged impairment resulting from the pain and nervousness produced by the accident which she asserts is sufficient, in and of itself, to be considered a permanent partial impairment of appellant's body.

It is apparent that the evidence before the Hearing Member and the Full Industrial Board was in sharp conflict, especially the testimony of the doctors herein. As the record indicates, Dr. Burwell testified that the scars covered less than one percent (1%) of appellant's body, whereas Dr. Stump testified that the scars covered an area of over ten percent (10%) of her body; Dr. Burwell testified that the largest scar was no more than three-fourths (3/4) of an inch in diameter and

Dr. Stump testified that the scars were three (3) to four (4) inches in diameter; Dr. Stump testified that the scars could develop into malignancy, and Dr. Burwell testified that in his twenty-five (25) years of experience, he had never heard of such scars developing into malignancy; Dr. Stump gave an estimate of fifteen percent (15%) impairment of the woman as a whole, whereas Dr. Burwell found no evidence of any permanent impairment, and so testified.

It is well established that this Court, in considering the findings of an award of the Industrial Board on review is required by numerous controlling precedents, to accept and consider only the evidence most favorable to the appellee. *E. Rauh & Sons Fertilizer Co. v. Adkins, et al.* (1955), 126 Ind. App. 251, 129 N. E. 2d 358.

Appellant urges the proposition that the award of the Full Industrial Board is contrary to law and is not supported by any evidence, but considering this proposition in the light of the aforementioned precedent, we must conclude otherwise.

As to whether appellant may have sustained a cosmetic or permanent disfigurement which might impair her future usefulness or opportunities, we must look to §40-1303(b), (7), Burns' 1964 Cum. Supp., which states in pertinent part:

"(7) In all cases of permanent disfigurement, which may impair the future usefulness or opportunities of the employee, compensation, *in the discretion of the Industrial Board* [shall be paid] not exceeding two hundred [200] weeks, . . ." (Bracketed words and emphasis supplied.)

Thus, in the discretion of the Industrial Board and considering that evidence most favorable to appellee, we find that Dr. Burwell testified as follows:

"Q. Do you have any opinion, Doctor, whether or not these scars you saw on Dorothy Campbell would in any way interfere with her ability to work?

"A. No.

"Q. Would they in any way interfere with her ability to earn a livelihood in the manner in which she had been accustomed?

"A. No, sir.

"Q. At the time you last examined her in November of 1963, did you have an opinion as to whether or not she had any impairment or disfigurement as a result of her accident?

"A. It was my opinion she was not permanently impaired.

"Q. Do you think she has reached a permanent and quiescent status?

"A. Yes, I do."

It is apparent that the question to be determined as to whether appellant incurred any disfigurement or permanent partial impairment which would affect her future usefulness or opportunities was a medical question, and from the above testimony the Hearing Member and the Full Industrial Board reasonably may have found as they did.

Appellant also strongly contends that the term "injury" as used in the Workman's Compensation Act includes the consequences from some physical break or wound to the body, such as mental ailments or nervous conditions causing a permanent impairment. In support of this proposition appellant relies on the case of *E. I. DuPont De Nemours & Co., v. Green* (1945), 116 Ind. App. 283, 63 N. E. 2d 547, in which it is said:

"It is our opinion that when a purely mental condition known as neurosis is shown by competent evidence to be the direct result of a physical injury sustained by an employee arising out of and in the course of the employment and which neurosis

through functional disturbances of the nervous system, disables the employee from working at his former occupation, he has suffered a compensable injury under the terms of the Indiana Workman's Compensation Act. . . ."

We are in agreement with the decision under the particular circumstances of that case. However, it is our opinion that this case is readily distinguishable from the case at bar. In the *E. I. DuPont De Nemours* case, *supra*, it is apparent from expert testimony, to which no contrary opinion was expressed, that a purely mental condition known as neurosis had developed as a direct result of a physical injury sustained by an employee. In the instant case, looking to the evidence most favorable to appellee and the legitimate inferences to be drawn therefrom, we can only conclude that at best there is testimony from Dr. Burwell which indicates that although it may be possible "for people to be nervous as a result of being splattered with hot metal zinc", in his opinion such a condition is "extremely rare" and that he would "have no way of knowing about her nerves" because "many things make us nervous." Dr. Burwell also admits that scars existed and said scars could give her pain. Since pain is a subjective complaint, Dr. Burwell testified that he would not question her feelings. However, as discussed above, Dr. Burwell, in his expert opinion testified that such scars would not in any manner interfere with her ability to earn a livelihood in the manner to which she had been accustomed and that in his opinion "she was not permanently impaired." It may also be logically concluded from this testimony that the alleged nervous condition, pain and discomfort were considered by the doctors in their over-all determination as to whether there was permanent impairment or not.

It also should be noted that the record indicates

that the question of permanent partial impairment was considered by the Single Hearing Member as specifically pointed out in his award which is as follows:

"It is further found that plaintiff's condition has now reached a permanent and quiescent state and as a result of said accidental injury, *she has sustained no permanent partial impairment.*" (Emphasis supplied.)

We also find that §40-1303(b), (6), Burns' 1964 Cum. Supp., also provides that the Industrial Board in cases of permanent partial impairment is to exercise its discretion in its final determination. This section is as follows:

"(6) In all other cases of permanent partial impairment, compensation proportionate to the degree of such permanent partial impairment, *in the discretion of the industrial board,* [shall be paid] not exceeding five hundred [500] weeks." (Bracketed words and emphasis supplied.)

The Single Hearing Member, having had the benefit of personal observation of the appellant and having heard the conflicting testimony of the doctors, could have been and obviously was convinced that no permanent impairment resulted from said accident, and it is our opinion that the record shows no reversible error, thus the decision of the Full Industrial Board should be affirmed.

Award of the Industrial Board affirmed.

Bierly, C. J., Hunter and Smith, JJ., concur.

NOTE.—Reported in 208 N. E. 2d 727.