## KILMER *v.* GALBRETH.

[No. 20,273.  Filed July 15, 1966.  Rehearing denied August 4, 1966.]

*Lynn O'Neill,* of Logansport, and *Albert W. Ewbank,* of Indianapolis, for appellant.

*George L. Brubaker,* of Logansport, for appellee.

SMITH, C. J.—This action was instituted by the appellant, Winifred Kilmer, against the appellee, Rose A. Galbreth. In said action the appellant sought to recover damages for personal injuries allegedly sustained by the appellant when she collided with a motor vehicle operated by the appellee.

The complaint, in substance, alleges the following:

That on the 12th day of May, 1962, in the City of Logansport, Indiana, there was a public thoroughfare designated as East Broadway, extending in an eastwardly and westwardly direction, which street was intersected at right angles by a street designated as Fifth Street, said Fifth Street extending in a northerly and southerly direction.

That at the intersection of East Broadway and Fifth Street at the time of the collision, there had been installed on the four corners of said intersection "stop" and "go" lights for the purpose of regulating the movement of traffic at said intersection.

That on the 12th day of May, 1962, the plaintiff was walking across East Broadway Street in a southerly direction from the north curb toward the south curb at a time when the traffic light located at the southwest corner of said intersection was "green," indicating that the plaintiff had the right, as a pedestrian, to cross Broadway.

That when the plaintiff was approximately 18 feet from the south curb line of East Broadway, the plaintiff was run down and struck by the defendant by reason of the careless, negligent and unlawful operation by the defendant of an automobile, thereby injuring the plaintiff.

That at said time the defendant was operating an automobile in a northerly direction upon Fifth Street; and carelessly, negligently and unlawfully so operated her automobile off of Fifth Street onto Broadway Street into and upon the plaintiff; and that such careless and negligent conduct on the part of the defendant consisted of the following acts of negligence:

"1. That the defendant carelessly and negligently failed to keep a lookout ahead so as to avoid running into and against the plaintiff and injuring her as hereinafter alleged.

"2. That the defendant carelessly and negligently failed to bring her automobile to a stop so as to avoid running into and against the plaintiff and injuring her as hereinafter alleged.

"3. That the defendant carelessly, negligently and unlawfully drove and operated her automobile into and against the plaintiff at a time when the plaintiff, as a pedestrian, was crossing the aforementioned Broadway.

"4. That the defendant carelessly and negligently failed to yield the use of the crosswalk at said intersection to the plaintiff."

That because of the careless and negligent operation of her automobile, the defendant operated her automobile against the plaintiff, striking the plaintiff's body with the front bumper of her said automobile and dragging the plaintiff down East Broadway for a distance of 55 feet and running over the plaintiff thereby causing the plaintiff's injuries.

The issues were formed by the appellant's complaint and the appellee's answer filed pursuant to Rule 1-3 of the Supreme Court.

Trial was had by jury, which resulted in a verdict in favor of the appellee.

The appellant filed a motion for a new trial, which in pertinent part reads as follows:

1. The verdict of the jury is not sustained by sufficient evidence.

2. The verdict of the jury is contrary to law.

3. The court erred in giving defendant's instruction No. 2.

4. The court erred in giving defendant's instruction No. 5.

5. The court erred in giving defendant's instruction No. 10.

6. The court erred in giving defendant's instruction No. 21.

7. The court erred in admitting into the evidence defendant's Exhibit A.

The motion for a new trial was overruled and from this ruling an appeal was taken.

The sole assignment of error is the overruling of the motion for a new trial.

The first error specified in the motion for a new trial is "that the verdict of the jury is not sustained by sufficient evidence." The verdict returned in this case is a negative verdict. The rule is well established in Indiana that a negative verdict, or decision, may not be attacked on the ground of insufficient evidence; and that a verdict or decision against the plaintiff who has the burden of proof does not rest upon the quantum of evidence, and it cannot be asserted on appeal that such a disposition was not sustained by sufficient evidence. See, 2 I. L. E. Appeals, Sec. 572 at p. 487, and cases cited. Because the case at bar resulted in a negative verdict, the specification of error that "the verdict is not supported by sufficient evidence" presents no error for our consideration.

The second specified error is that "the verdict of the jury is contrary to law."

The appellant, after an exhaustive review and discussion of the record evidence, maintains that the evidence relevant to the negligence of the appellee is clearly conclusive of appellee's negligence and stands uncontradicted; and that the jury could have arrived at but one verdict, that being a decision in favor of the appellant.

Assuming arguendo that the negligence of the appellee was clearly established by uncontradicted evidence, the sole issue then remaining for this Court to consider and determine is whether there was evidence from which the jury, as reasonable men, could infer contributory negligence on the part of

the appellant. In other words, we need only to consider the question of contributory negligence on the part of the appellant as a defense to appellee's own negligence.

The law requires that every person having the capacity to exercise ordinary care is required to do so for his own protection; and, if a person fails to use such care in order to avoid injury to himself he is guilty of contributory negligence. *Stewart, Administratrix* v. *The Pennsylvania Company* (1891), 130 Ind. 242, 29 N. E. 916; *Kingan & Company, Limited* v. *Foster* (1913), 53 Ind. App. 511, 102 N. E. 103.

Ordinary care is required to be determined by the facts and circumstances of each particular case, and by what a man of ordinary care and prudence would do under similar circumstances to avoid injury to himself. See, *Kingan & Company, Limited* v. *Foster, supra.*

The appellant maintains that there was not one iota of evidence to support the defense of contributory negligence, and that the jury, as reasonable men, could not have found that the appellant was guilty of contributory negligence. This Court many times has held that, under an assignment of error that a decision is contrary to law, it cannot weigh the evidence but is required only to consider evidence most favorable to the appellee, together with any reasonable inference drawn therefrom. See, *Gaut* v. *Gaut* (1963), 134 Ind. App. 317, 187 N. E. (2d) 580, 581.

In examining the evidence of contributory negligence most favorable to appellee the following facts are revealed.

The appellant, upon direct examination, testified that she stopped at the corner of the intersection of Fifth and Broadway, at the northwest corner thereof, and waited for the traffic light to change. That when the traffic light changed, she started across the street. That when she arrived at the center of the street, she stopped and waited for a vehicle to pass in front of her. That said vehicle had come off of Fifth

Street onto Broadway. That while waiting there for said vehicle to pass, she saw another vehicle on Fifth Street and *presumed that she had enough time to cross the street* as she had the traffic light in her favor. So she started to go on across the street just after the first vehicle passed in front of her, at which time the second vehicle came around the corner and struck her. In her complaint the plaintiff (appellant) alleged that "the defendant (appellee) drove and operated her automobile against the plaintiff (appellant), striking her with the front bumper and dragging her down the street of Broadway for a distance of fifty feet and running over the plaintiff (appellant)." However, in the evidence, the appellant testified on direct examination as follows:

"Q. And where were you with reference to the south curb line of the Broadway street?
"A. I would say in the line of traffic in the south lane. As noted before there are three lanes there and I was in the south lane when it hit me.
"Q. Now do you have any thought as to how long you saw the car immediately before it struck you?
"A. No. Just a flash, I just looked up and it was right there at me. *I caught it out of the corner of my eye,* of course I was going across.
"Q. What did you do when you first saw the automobile?
"A. I sidled to the right.
"Q. Did you throw your hand up?
"A. I threw my hands up in the air, one or both, I don't know whether it was just one or both, on to the hood of the car and I run backwards with the momentum of the car and it bowled me over.
"Q. Did you recall what happened as you fell on the sidewalk, do you recall?
"A. No I just hit the street and that was it.

On cross examination, the appellant testified as follows:

"Q. You say the light had changed before you walked out into the street?
"A. Yes.

"Q. When it changed you walked out to near the middle of this three traffic lanes?

"A. It would be about the middle of the street or just over the middle.

"Q. And you waited there because there was a car passing?

"A. Absolutely.

"Q. Going west on Broadway?

"A. It was.

"Q. And as you waited there you are not sure whether the car came off of Fifth or ran the light on Broadway, are you? . . .

"Q. You testified on direct examination that you waited there in the center of the street, or in that area, until a car passed and you did not know where it came from, didn't you?

"A. I assume it came off of Fifth Street. It could not have come from anywhere else unless it was running lights.

"Q. You don't know that it did not run a light do you?

"A. I would say that it did not. My *impression* is that it came off of Fifth.

"Q. That is your impression but you don't know do you?

"A. I don't think my eyes would deceive me on it.

"Q. Were you watching?

"A. I saw it coming around the corner at me.

"Q. You did. Now when you saw this car coming around the corner at you, what did you do?

"A. I stopped and waited for it to go by.

"Q. And then as it went by it shielded you from the view of anybody else coming?

"A. Oh no.

"Q. Was it a small car?

"A. How could it shield me. It was in front of me.

"Q. Well anyone coming from the south could not see you as long as that car was between you and them, could they?

"A. It still could not shield my view. As soon as it got by I of course did not stand there for twenty minutes and look to see if there were any more cars. It could not have been

shielding my view because it would be directly in front of me.

"Q.  Well did it shield you from the view of anybody else?
"A.  I suppose while it was in front of me it would but after it passed it wouldn't. And there was no other heavy traffic.

"Q.  Now was the traffic heavy at that time?
"A.  It was not heavy. I would not call it heavy traffic.

"Q.  And this car after it passed in front of you, you think it came off of Fifth Street?
"A.  I would say it did, I would be willing to swear to that statement.

"Q.  Well you are swearing to that fact are you not?
"A.  Well yes.

"Q.  At the time you were standing there and that car went by, if Mrs. Galbreth was the next car up, she would not have been able to see until it went by, would she?
"A.  Well as long as I was standing there and the car was there but it was moving away and after it went on by.

"Q.  You stated in your direct examination that you saw the Galbreth car standing still at its approach to Broadway, right?
"A.  That is right.

"Q.  And where was this other car that passed in front of you at the time you saw the Galbreth car standing still?
"A.  It had already passed in front of me. And her car was sitting around on Fifth Street yet. That is the reason I went on across.

"Q.  How far did you walk then before you were right in front of her car?
"A.  Well I took just a few steps. I didn't stop to count the steps.

"Q.  There was nothing between you and her car at that time?
"A.  Nothing between me and the sidewalk.

"Q.  Let me ask you this: Did this first car that came through, start from Fifth Street after the light changed?
"A.  Yes.

"Q.  You were in the cross-walk at that time?

"A. Well no it would not start after the light changed. Well it would have to start after the light changed yes because I started after the light changed. Apparently other cars had gone around the corner too because I had gotten half way across the street before this car, the one that I remember, passed in front of me."

Robert Artrip, a witness for the appellant, testified on cross examination as follows:

"Q. Now when you first saw Mrs. Kilmer, was she in front of the car?

"A. That is right, she was.

"Q. You did not see her come across the street?

"A. Not clear across no.

"Q. And at the time she was struck, where was she with reference to the west white line?

"A. Well it looked like she had stepped forward to keep from being hit by the car, she held up her hands.

"Q. Did you see her step over?

"A. No I did not.

"Q. So at the time you saw her and the only time you saw her, she was outside the white line?

"A. That is right.

"Q. Not in the white line?

"A. That is right.

Cleo T. Baker, a police officer and witness for the appellant, testified on direct examination as follows:

"Q. And did you see Mrs. Kilmer, the plaintiff in this case, at the same time?

"A. I did.

"Q. Where was Mrs. Kilmer when you first saw her.

"A. She was about ten feet north of the southwest cross walk, at Fifth and Broadway.

"Q. Ten feet out into the street?

"A. Yes.

"Q. And what was her position at that time?

"A. I think she was sitting down."

Esther Smith, a witness for the appellant, testified on cross examination as follows:

"Q. Was there anything about this that caused you to notice it, that attracted your attention to it other than the fact that she was knocked down?

"A. No.

"Q. Before it happened, was there anything that attracted your attention to it?

"A. No. I was just watching the pedestrians cross the street.

"Q. And how far did the car travel?

"A. Just a few feet.

"Q. Three or four feet?

"A. I would think so.

"Q. Just a short distance?

"A. Yes sir.

"Q. And what did you observe then?

"A. Mrs. Kilmer was lying in the street and then the crowd gathered around.

"Q. And then you went back to work?

"A. I went back to work."

The appellee, Rose Galbreth, testified on direct examination that "I stepped up to her (meaning appellant) and said 'I'm sorry. I did not mean to hit you.' She (meaning appellant) said 'I know you didn't. *I tried to warn you all the way across.*" (Emphasis supplied)

The appellant has cited in her brief various statutory regulations concerning the rights and duties of a pedestrian. These statutory regulations authorize the pedestrian ■ to exercise certain rights, however, the user of a public street or highway, whether as an operator of a motor vehicle or as a pedestrian, under the law, cannot rely on the right of way authorized by statutory rules and regulations to provide absolute safety. A pedestrian has no right of proceeding heedlessly across a street without exercising ordinary care for his own safety. Such user must at all

times exercise ordinary care for his own safety and he is required to avail himself of all his faculties to avoid danger or injury. If such pedestrian fails to exercise ordinary care for his own safety and proceeds heedlessly into a known area of danger, he is negligent in the eyes of the law. If such negligent conduct proximately contributes to his injury, to any degree, his claim is barred by law even if the other party may have been negligent to some degree. *Montgomery* v. *Gerteisen* (1964), 135 Ind. App. 633, 195 N. E. (2d) 868; *Cushman Motor Delivery Co.* v. *McCabe, Adm.* (1941), 219 Ind. 156, 36 N. E. (2d) 769.

It is the duty of the jury to determine, as a question of fact in each case, whether the conduct of the party on whom a duty rests measures up to the standard of ordinary care as defined by law. *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 519, 124 N. E. 738.

In the case of *Pfisterer* v. *Key* (1941), 218 Ind. 521, 529, 33 N. E. (2d) 330, the Supreme Court in its opinion, spoke as follows:

"It has been many times said that it is negligence to fail to see or hear that which you could see or hear by the exercise of ordinary and reasonable care, and for that reason, the law attaches the same legal consequences for not seeing or hearing as it does if in fact you did see and hear."

In *Montgomery* v. *Gerteisen, supra,* the Appellate Court held as follows:

"The appellant himself, even though a pedestrian, had a duty to exercise due care as respects his own safety. See: (Cushman Motor Delivery Co. vs. McCabe Adm.—1941— 219 Ind. 156; 36 N. E. 2d 769. *He is not entitled to assume that he, and he alone, had the right to use the street for crossing at the time of* the collision.)" (Emphasis supplied)

It is maintained by the appellee that the evidence did not support the appellant's contention that the jury could have reached but one verdict, a verdict in favor of the appellant.

From an examination of the record evidence, as above quoted, it is our opinion that the jury had evidence before it upon which it could have found that the appellant failed to use her faculties with which nature endowed her and that she plunged heedlessly into a line of moving traffic and thus was guilty of contributory negligence which proximately contributed to the collision and to her alleged injury.

The confused state of appellant's testimony could have cast doubt upon her credibility. The allegation in her complaint that she was dragged 55 feet and was run over is contradicted by her own testimony that she moved only three or four steps when appellant's vehicle struck her.

Other evidence of her confused state of mind is that she "presumed that she had enough time;" and that "I caught it out of the corner of my eye;" that "my impression is that it came off of Fifth Street;" together with the statement made to the appellee "I know you didn't. I tried to warn you all the way across." This evidence clearly indicates a lack of positive testimony or clear understanding on the part of the appellant. Therefore, it is our opinion that the jury might have inferred that she did not have a clear understanding of the facts and was crossing the street heedless of the danger which existed or which would have appeared imminent to an ordinarily careful and prudent person. It is further our opinion that this lack of positive testimony and a clear understanding on the part of the appellant could have formed the basis from which a jury inferred prejudice on the part of the appellant and could have entirely discredited her testimony; and that the jury, relying on these confused statements, could have determined that the appellant was the negligent party or that she was chargeable with contributory negligence proximately contributing to her injury and thus barring her claim.

Where the evidence is without conflict and can lead to but one conclusion and the trial court has reached an opposite

conclusion, then the judgment of the trial court will be set aside on the grounds that it is contrary to law. *Pokraka* v. *Lummus Co.* (1953), 230 Ind. 523, 104 N. E. (2d) 669.

The remaining questions are as to the instructions and the acceptance into evidence of "Defendant's Exhibit A." The appellant in her motion for a new trial maintains that the trial court erred in giving appellee's tendered instructions No. 2, 5, 10 and 21. It is our opinion that said instructions fairly instructed the jury, and we find no reversible error in the giving of said instructions.

However, we deem it necessary to discuss the specific error raised as to the giving of appellee's instruction No. 5. Instruction No. 5, as tendered by the appellee, reads in part as follows:

"The question of reasonable care with respect to all parties depends wholly upon the situation before and at the time of the *accident* and not upon anything known or discovered afterwards, which could not with reasonable diligence, have been known or discovered before the occurrence of the *accident. . . .*" (Emphasis supplied)

The appellant objects to use of the term "accident" in the instruction, contending that the term "accident" mislead the jury and inferred that the occurrence of the collision was not an "accident." It is our opinion, however, that the use of the term "accident" in said instruction is proper, and that the term "accident" is commonly accepted to mean an event that happened when quite unlooked for or unforseen.

The appellant, in her brief, refers to instruction No. 12 tendered by the appellee and given by the court without objection. Instruction No. 12 reads as follows:

"The law of this state recognizes the possibility of a *mere accident,* that is, an occurrence which is in no way due to the negligence or fault of anyone.

"The happening of a *mere accident* resulting in injury cannot support a verdict for damages. Therefore, if you find any injury or damage suffered by the Plaintiff in this case was the result of a *mere accident,* there can be no recovery by the plaintiff." (Emphasis supplied)

While the appellant did not specifically object to the giving of instruction No. 12, she does claim that the use of the term "accident" in instruction No. 5 and in instruction No. 12 is repetitious and misleading.

In reply to this contention, the appellee maintains that the use of the term "accident" in instruction No. 12 is not in any way synonymous with the use of the term "accident" as used in instruction No. 5. It appears to us that the objection of the appellant presents only a question of semantics; and that the term "accident" as used in instruction No. 5 refers only to "an occurrence" while said terms as used in instruction No. 12 refers to "fault."

Following the submission of this case, including the preparation and presentation of the briefs, two cases have been decided by our Supreme Court which cases deal specifically with the giving of a "mere" or "unavoidable" accident instruction. In the case of *Miller* v. *Alvey* (1965), 246 Ind. 560, 207 N. E. (2d) 633, the Supreme Court held as follows:

". . . The expression 'unavoidable accident' or 'pure accident' is not an affirmative defense and has no particular connotation in Modern pleading of negligence cases. Such terminology adds nothing to the issues properly before the court or jury and as the expressions are ambiguous and particularly confusing to lay jurors, *their use in instructions is undesirable and unwise, and any statements in prior decisions of this state construed as authorizing instructions on 'pure accident' or 'unavoidable' are hereby disapproved."* (Emphasis supplied)

Our Supreme Court spoke again on this question in the case of *White* v. *Evansville American Legion Home Association* (1965), 247 Ind. 69, 210 N. E. (2d) 845. In substance the

Supreme Court held that it is reversible error to give an instruction, in a negligence action, in which the term "mere accident" or "unavoidable accident" is defined. See also, *Letcher Blanton* v. *Will Gifford Upchurch* (1965), 138 Ind. App. 132, 212 N. E. (2d) 177.

As we interpret these recent decisions, it is now reversible error to give an instruction in an action based on negligence in which instruction the term "mere accident," or any term of a similar nature is defined. However, because the appellant did not specifically allege as error the giving of appellee's instruction No. 12, any error involving the giving of said instruction has been specifically waived.

Finally the appellant assigns as error the admission into evidence of defendant's (appellee's) Exhibit A. The appellant specifically objects to the introduction, into evidence of this exhibit because it was a statement signed by the appellant for an insurance adjuster who had interviewed the appellant concerning a subsequent injury. In reply appellee maintains that "Exhibit A" was offered and admitted into evidence for impeachment purposes and to show that appellant had made contradictory statements regarding the seriousness of her injury. For such purpose, it is our opinion that no reversible error was committed by the trial court in admitting it into evidence.

It is our opinion that the evidence of negligence on the part of the appellee was contradicted, and was not properly established when all of the facts and circumstances were considered; that contributory negligence on the part of the appellant was proved by the testimony of witnesses and circumstances as shown in the record; that the instructions, the giving of which was objected to by the appellant, were proper when read and construed with all of the instructions given by the trial court; and that the record discloses no reversible error.

Judgment affirmed.

Bierly and Hunter, JJ., concur; Mote, J., not participating in opinion.

NOTE.—Reported in 218 N. E. 2d 361.