Mark P. BECKERMAN, M.D.,
Appellant–Defendant,

v.

Robert B. GORDON, as Administrator of
the Estate of Mary Ann Gordon,
Deceased, Appellee–Plaintiff.

No. 29A02–9207–CV–320 [1].

Court of Appeals of Indiana,
Second District.

May 27, 1993.

Steven J. Cohen and Edna M. Koch, Tipton, Cohen & Koch, Indianapolis, Michael E. Douglas, Douglas Law Office, Frankfort, for appellant-defendant.

Stephen A. Gross, Hughes & Gross, Carmel, Karen B. Neiswinger, Indianapolis, Ted R. Johnson, Frankfort, for appellee-plaintiff.

FRIEDLANDER, Judge.

## CASE SUMMARY

Defendant-appellant Dr. Mark Beckerman (Dr. Beckerman) brings this interlocutory appeal from the denial of his motion for summary judgment against plaintiff-appellant Robert Gordon (Robert), acting as the administrator of the estate of Mary Ann Gordon (Mary Ann), claiming the trial court improperly applied and misconstrued Indiana's Good Samaritan Law.[2]

We affirm.

## FACTS

The facts most favorable to the nonmoving party (the Estate) reveal that in the early morning hours of January 15, 1987, Robert was awakened by his wife, Mary Ann. She complained of left chest pain

1. This case and the case of *Steffey v. King*, Ind.App. 614 N.E.2d 615 were consolidated for the purpose of decision on appeal only. This court's separate opinion in *Steffey* has also been handed down today.

2. Ind.Code 34–4–12–1 (1988).

which radiated down her left arm, an upset stomach, and that she was very hot. Robert, in considering what course of action to take, contacted Dr. Beckerman to see if he would make a house call, rather than attempting to take Mary Ann to the hospital or call an ambulance. Dr. Beckerman was not Mary Ann's usual physician, but was in practice with her family doctor and lived a few blocks away.

Dr. Beckerman, upon being told of Mary Ann's symptoms, agreed to come and see her. He arrived at the Gordons' house approximately ten minutes after speaking to Robert. He examined Mary Ann in her bed and diagnosed her ailment as pleurisy of the left lower lung (pleurisy is a painful inflammatory condition involving friction between the surface of the lung and the chest wall). Dr. Beckerman assured the Gordons that pleurisy was not serious and prescribed pain and anti-nausea medication for Mary Ann. After Robert expressed concern over leaving Mary Ann alone, Dr. Beckerman reassured him that he could, but nonetheless gave him some samples of the medication he had in his bag.

The Gordons were instructed to call Dr. Beckerman again if Mary Ann's symptoms had not improved in an hour. Dr. Beckerman made an appointment to see Mary Ann in his office at 9:00 that morning for further evaluation. Although emotionally relieved that her ailment was not serious, Mary Ann's condition did not improve, and approximately an hour after Dr. Beckerman's treatment she began gasping for breath and choking. Robert called Dr. Beckerman, and he returned in three to four minutes. When he arrived, Mary Ann was in full cardiac arrest, lying on the bed, not breathing, with dilated pupils and a blue face. Dr. Beckerman initiated cardiopulmonary resuscitation. Mary Ann was transported by ambulance to the nearest hospital. Her heart was restarted, but she never regained consciousness and subsequently died. An autopsy disclosed that her initial symptoms were the result of a large blood clot completely blocking one of her coronary arteries, which caused damage to a large area of her heart muscle.

Robert, as the administrator of Mary Ann's estate, filed a medical malpractice complaint against Dr. Beckerman. In Dr. Beckerman's submission to the medical review panel, he claimed that Indiana's Good Samaritan Law was applicable and argued that the standard of care the panel should apply was whether his conduct constituted gross negligence or wilful or wanton misconduct.

Robert sought a preliminary determination from the Hamilton Circuit Court on the issue raised by Dr. Beckerman of the applicability of the Good Samaritan Law. The Hamilton Circuit Court granted Robert's motion for summary judgment and denied Dr. Beckerman's motion to dismiss, concluding the Good Samaritan Law was not applicable. Dr. Beckerman was ordered to amend his submission to the panel to delete his arguments based on the Good Samaritan Law. Dr. Beckerman filed a petition to allow for an interlocutory appeal from that decision, which was denied by this court.

The medical review panel issued its unanimous opinion which concluded that Dr. Beckerman was negligent and that his negligence was a factor in Mary Ann's death. Robert then filed suit in the Hamilton Circuit Court, and Dr. Beckerman obtained a change of venue to the Clinton Circuit Court (the trial court). Dr. Beckerman filed his answer, which included a defense raising, once again, the immunity provisions of the Good Samaritan Law.

Robert filed a motion to strike Dr. Beckerman's Good Samaritan defense, and Dr. Beckerman sought summary judgment, claiming the immunity granted under the Good Samaritan Law. After a hearing, the trial court sustained Robert's motion to strike and denied Dr. Beckerman's request for summary judgment. The trial court certified its decision and this court accepted Dr. Beckerman's interlocutory appeal.

## ISSUE[3]

Whether Dr. Beckerman is entitled to immunity under the Good Samaritan Law?

---

3. Dr. Beckerman raised an issue relating to the effect of the Hamilton Circuit Court's summary

**612**

## DECISION

*PARTIES' CONTENTIONS*—Dr. Beckerman claims he was rendering emergency care during an emergency and is therefore entitled to the protection of the Good Samaritan Law. Robert responds that the Good Samaritan Law applies only to persons who render emergency care at the scene of or to the victims of an accident, and as a result Dr. Beckerman's conduct did not fall within the Law's scope.

*CONCLUSION*—The Good Samaritan Law does not apply.

This is the first opportunity for an Indiana court to analyze the provisions of Indiana's Good Samaritan Law, which provides:

"Any person, who in good faith gratuitously renders emergency care at the scene of an accident or emergency care to the victim thereof, shall not be liable for any civil damages for any personal injury as a result of any act or omission by such person in rendering the emergency care or as a result of any act or failure to act to provide or arrange for further medical treatment or care for the injured person, except acts or omissions amounting to gross negligence or wilful or wanton misconduct."

IC 34–4–12–1.

Good Samaritan [4] laws have been enacted in every state. The statutes encourage physicians, and sometimes others, including laypersons, to render emergency care at the scene of an accident without fear of common law liability if they fail to exercise reasonable care when providing the emergency care. *See* Annotation, *Construction and Application of "Good Samaritan" Statutes*, 68 A.L.R.4th 294 (1989).

■ When construing statutes in derogation of the common law, the statute is strictly construed against limitations on a claimant's right to bring suit. And when such a statute is enacted, we presume the legislature was aware of the common law and that it did not intend to make any changes beyond those contained in the express terms or unmistakable implications of the statute. *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796.

■ On its face, Indiana's Good Samaritan Law applies to any person who, gratuitously and in good faith, renders emergency care: 1) at the scene of an accident; or 2) to the victim thereof. It is clear then that only persons who render emergency care at the scene of or to the victim of an accident are entitled to the law's immunity. Dr. Beckerman first argues that the legislature intended the statute to apply not only to accidents, but to other emergencies as well. We cannot agree.

The plain language of the act does not support Dr. Beckerman's claim. The language used by the General Assembly here is substantially different than the language employed by other states in their Good Samaritan laws. *See e.g.* Cal. Business and Professional Code § 2395 ("emergency care at the scene of an emergency"); Ga.Code Ann. § 31–11–8 ("emergency care to a person who is a victim of an accident or emergency"); Ill.Rev.Stat.1987 ch. 111, ¶ 4400–30 ("emergency care without fee to a person"); Kan.Stat.Ann. § 65–2891 ("emergency care or assistance at the scene of an emergency or accident"); Mont.Code.Ann. § 27–1–714 ("emergency care or assistance ... at the scene of an emergency or accident"); Nev.Rev.Stat. § 41.500 ("emergency care or assistance in an emergency").

Because we strictly construe the Good Samaritan Law, and because we presume the legislature did not intend any changes in the common law beyond those expressed in the statute, *see Tittle, supra,* we must conclude that if the General Assembly had intended to include all emergencies within the scope of the Law, it would have ex-

---

judgment decision on the trial court's subsequent judgment. Robert argued to the trial court that Dr. Beckerman was barred by *res judicata* from relitigating the applicability of the Good Samaritan Law. Nothing in the trial court's judgment suggests it accepted Robert's

*res judicata* argument, and because we affirm the trial court's decision on its merits, we do not address that assertion.

**4.** The Biblical parable of the Good Samaritan is found in *Luke* 10:30–37.

pressly done so, just as have the legislatures in other states.

This conclusion is bolstered by an examination of the evolution of our Good Samaritan Law. The current Law was enacted in 1971. Ind.Acts 1971, P.L. 447 § 1. Prior to the 1971 amendment, Indiana's Good Samaritan Law applied to emergency care rendered "at the scene of an accident, *casualty, or disaster* to a person injured therein...." Ind.Acts 1963, c. 319 § 1 (emphasis supplied). Since the legislature altered the scope of the Law and did not expand its purview to include all emergencies, as other states have, we conclude that the legislature did not intend the Good Samaritan Law to apply to all emergencies.

The legislature has not provided a definition of the term "accident" as it is used in the Good Samaritan Law. While the term has been defined in many ways in various contexts by numerous courts, we can, at least, agree with the observation that "'[a]ccident' is a word of varied meaning and of no fixed legal signification." *N.W. Elec. Power Coop., Inc. v. American Motorists Ins. Co.* (1969), Mo.App., 451 S.W.2d 356, 363.

Generally, an "accident" can be defined as a sudden, unexpected event. *See e.g. Kerchner v. Kingsley Furniture Co.* (1985), Ind.App., 478 N.E.2d 74, *trans. denied; see also* Black's Law Dictionary, 15 (6th ed. 1990). An "emergency" can be described as an unexpected condition or set of circumstances requiring immediate attention. *See e.g. Breazeal v. Henry Mayo Newhall Mem. Hosp.* (1991), 234 Cal. App.3d 1329, 286 Cal.Rptr. 207; *see also* Black's Law Dictionary, 522–23 (6th ed. 1990).

We perceive that the distinction between an "accident" and an "emergency" is that an accident is a single discrete *event* causing unexpected consequences, while an emergency is a *condition* that has unexpectedly arisen. An "emergency" can be thought of as the effect of an "accident," but not all emergencies are the result of accidents, as the condition could develop from a gradual series of events, and all accidents do not necessarily create emer-

gencies. The term "emergency" has a broader scope than the word "accident" and the terms are not synonymous. Therefore, as used in the Good Samaritan Law, we conclude the legislature intended "accident" to mean a type of sudden calamitous event, and not all situations that might require immediate action.

This conclusion is supported by our decision in *McKinney v. Public Service Co.* (1992), Ind.App., 597 N.E.2d 1001, *trans. denied,* in which we considered the application of the Good Samaritan Law when a truck driver stopped to aid a stranded motorist. We observed the Good Samaritan Law did "not apply under the present circumstances because [the truck driver] did not stop the PSI truck in the interstate to render emergency care at the scene of an accident or to the victim thereto. There was no accident until [a third party] crashed into the PSI truck." *Id.* at 1010.

■ Dr. Beckerman next posits that, even if the Good Samaritan Law does not apply to all emergencies, Mary Ann was the victim of an accident and the Law is applicable to him. In light of our foregoing analysis, we again disagree. The undisputed facts established that Mary Ann's condition was not the result of a sudden calamitous event of the type contemplated by the legislature. *Record* 104–5. While her symptoms constituted circumstances of so pressing a character that some action needed to be taken, she was not the victim of an "accident" as that term is used in the Good Samaritan Law. Dr. Beckerman's argument is essentially a request for us to equate "accident" with "emergency."

Because Dr. Beckerman was not entitled to immunity, as a matter of law, the trial court did not err when it denied his motion for summary judgment or when it struck his defense based on the Good Samaritan Law.

Judgment affirmed.

CONOVER, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Dr. Beckerman appeals not only from the denial of his Motion for Summary Judgment. He also appeals the dismissal or striking of his defense based upon the Good Samaritan Law, I.C. 34–4–12–1. The latter contention is of import in light of my view that although the denial of Dr. Beckerman's Motion for Summary Judgment was correct, he should have been permitted to assert the Good Samaritan defense by presenting it to the trier of fact. In other words, I do not agree that, as a matter of law, the Good Samaritan defense is unavailable to Dr. Beckerman. There are genuine issues as to material facts; or at a minimum, there are differing inferences which might reasonably be drawn from the undisputed facts.

Were it not for definitions of "accident" contained in numerous Indiana case decisions, I might find the majority's analysis of the legislative history of our statute more persuasive. By deleting "casualty or disaster" from the statute, it might appear, as opined by the majority, that the General Assembly did not intend that every rendering of emergency care should cloak the actor with the protection of the Good Samaritan defense. The fact remains, however, that "emergency" and "accident", as correctly observed by the majority, are not synonymous; but neither do I perceive, as does the majority, that Dr. Beckerman's argument requests of us to equate the two.

The word "emergency" describes the nature of the care administered in the particular situation, while "accident" describes the occurrence which brings about the necessity for that care. In order for the Good Samaritan defense to be available, the care must be of an emergency nature and in addition, that care must be required or indicated as a result of an "accident". An "accident", in its normal and common connotation, may be deemed to be "any mishap or untoward event not expected or designed." *E. Rauh & Sons Fertilizer Co. v. Adkins* (1955) 126 Ind.App. 251, 129 N.E.2d 358, 360. *See also Miller v. Alvey* (1965) 246 Ind. 560, 207 N.E.2d 633, 636 (accident is a "usually sudden event or change");

*Kilmer v. Galbreth* (1966) 139 Ind.App. 252, 218 N.E.2d 361 (accident is an unlooked for or unforeseen event).

However, the unexpectedness of the event (here, Mary Ann Gordon's heart attack) must be viewed from the perspective of the victim and not from the perspective of the reasonable person. In other words, the fact that we know from experience that heart attacks are not uncommon and are to be considered as a normal everyday occurrence in our society, is not the criteria. As to the individual concerned, his or her specific attack is usually not anticipated or expected—at least with regard to one's first experience with a heart attack. The test is purely subjective from the perspective of the victim. *Inland Steel Co. v. Almodovar* (1977) 2d Dist., 172 Ind.App. 556, 361 N.E.2d 181, 187, *trans. denied,* 266 Ind. 638, 366 N.E.2d 169; *Estey Piano Corp. v. Steffen* (1975) 2d Dist., 164 Ind. App. 239, 328 N.E.2d 240. In this sense, then, "accident" focuses upon the injury, i.e., the result of the event or occurrence. *Ellis v. Hubbell Metals Inc.* (1977) 1st Dist., 174 Ind.App. 86, 366 N.E.2d 207. In this regard, I am in agreement with the views of Judge Ratliff and Justice DeBruler as respectively set forth in *Kerchner v. Kingsley Furniture Company, Inc.* (1985) 1st Dist.Ind.App., 478 N.E.2d 74, *trans. denied,* (Ratliff, J., concurring), and *Calhoun v. Hillenbrand Industries, Inc.* (1978) 269 Ind. 507, 381 N.E.2d 1242, 1245 (DeBruler, J., dissenting).

When the focus is upon such issues as involved in casualty insurance coverage cases, it is wholly appropriate to construe "accident" as descriptive of the event itself under an objective standard. Where, as here, however, as in Workers Compensation cases, the issue focuses upon the injured party or the victim of the event, the "accident" must be viewed from the perspective of that person.

The majority here may be correct in its conclusion that our legislature "did not intend any changes in the common law beyond those expressed in the statute". Slip Opinion at 7. On the other hand, the legislature may not have intended the "event"-

oriented definition to be the referent of the Good Samaritan statute. Had it intended, the General Assembly could have provided a definition of "accident". It did not do so.

Here, Dr. Beckerman clearly and unmistakably was responding to a cry for help, literally "in the night". Mrs. Gordon was not his patient until he arrived and began his diagnostic procedure. The relationship was not different from that of a doctor who responds to the medical needs of a golf partner who suddenly keels over or one who assists a stranger along the side of the road.

An "accident" does not require a victim trapped in, or thrown from, a vehicle crushed at a collision site. It does not describe only a situation which exists as upon an unexplained collapse of a construction scaffold causing serious injury. "Accident" clearly and accurately would describe an intentional terrorist bombing of a New York Trade Center office complex resulting in many injuries. An intentional terrorist attack is not an "accident" except as to those who are innocent injured victims and as to those who volunteer to treat or assist the victims. To hold otherwise is to encourage medically trained persons to ignore the need for such assistance in order to avoid "becoming involved".

By my dissent, I do not imply that Dr. Beckerman will succeed in his Good Samaritan defense. I state merely that he should be permitted to present that defense before the trier of fact. There would appear to be various factual issues which must be resolved in consideration of the defense. The cause should be remanded so that the trier of fact might do so.