[S. F. No. 7454.   In Bank.—June 28, 1916.]

SOUTHWESTERN SURETY INSURANCE COMPANY (a Corporation), Petitioner, v. A. J. PILLSBURY et al., as Members of and Constituting the Industrial Accident Commission of the State of California, Respondents.

WORKMEN'S COMPENSATION ACT—EMPLOYEE OF LUMBER COMPANY—ACCIDENTAL INJURY WHILE LOADING LUMBER—WRENCH OF BACK.—An employee of a lumber company, who while loading lumber in its yard, and during the act of pulling a piece of timber from a pile, either slipped or in some manner wrenched his back and fell down, is injured "by accident," arising out of and in the course of the employment, within the meaning of section 12 of the Workmen's Compensation, Insurance and Safety Act, as it read before its amendment in 1915.

ID.—FINDING OF COMMISSION—CONFLICT OF EVIDENCE—CONCLUSIVENESS.—The finding of the Industrial Accident Commission, based upon conflicting testimony that the claimant's condition of continuing disability was the result of the accidental injury, may not be disturbed by the supreme court on proceedings to review the award.

ID.—INDEFINITENESS OF AWARD—FAILURE TO STATE PERIOD OF DISABILITY PAYMENTS.—An award for temporary disability is not objectionable because it fails in terms to limit the time of payment to two hundred and forty weeks. The statute itself makes that limitation, and the award cannot be effective beyond that period.

ID.—FORM OF AWARD—OPTIONAL RIGHT GIVEN INSURANCE CARRIER.—An award of compensation, which is otherwise in due form and complete in itself, is not invalidated by the fact that it includes an optional right to the insurance carrier, which, if accepted by it, would compel it to pay for surgical services rendered later than the ninety-day period following the accident.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

H. L. Clayberg, J. W. Maloney, and Clayberg & Whitmore, for Petitioner.

Christopher M. Bradley, for Respondents.

MELVIN, J.—A proceeding in *certiorari* to review the action of the Industrial Accident Commission in awarding compensation to H. J. Petersen, who was injured while he was in the employ of the E. K. Wood Lumber Company at Oakland. The petitioner was the insurance carrier of the said lumber company.

Petersen was working as an employee of the E. K. Wood Lumber Company in the lumber-yard of that corporation on March 13, 1914. He was assisting another man in loading four by six redwood timber on trucks. While pulling a piece of timber out from a pile he either slipped or in some manner wrenched his back and fell down. He arose, put that stick of timber on the truck, and then could not move. He was assisted to his home and was under a doctor's care until the 10th of the following August, when he returned to work. He testified that he worked until the 26th of August, when the "sciatica" came back again and he was compelled to stop working. He received compensation from the petitioner at the rate of $13.12 per week from a time shortly after his injury until August 10th, the date of his return to work, and all of his doctor's bills, charges for drugs, and like expenses were also paid. After August 26th he received no compensation. His account of the manner of receiving the injury was corroborated by his coworker, and medical testimony which we shall have occasion to discuss later was heard. The Industrial Accident Commission ordered the Southwestern Surety Insurance Company to pay $406.72, and $13.12 per week beginning March 31, 1915, until the termination of the disability or the further order of the commission. There was a further order whereby the surety company was given the right to tender to Petersen an adequate and proper surgical operation at the company's expense to cure him and relieve him of his disability. It was the further order of the commission that, in the event of such an offer, if Petersen should refuse to submit to the operation, or having submitted should neglect further to co-operate and aid in his cure, or if the treatment should result in the removal of his disability, or if he and the surety company should, with the consent of the commission, agree upon a final settlement, the payment of the indemnity should thereupon cease.

Petitioner insists that there is no evidence that the injuries were received by Petersen as the result of an "accident" as

CLXXII Cal.—49

provided in the law then in force; that even assuming that the applicant was disabled as the result of an accident, he had been entirely cured when he returned to work; 'that under the evidence the "sciatica" which caused Petersen to leave his work the second time could not be attributed to the injury; that the award is indefinite, because the order provides for a termination of the indemnity only upon the ceasing of the disability or *the further order of the commission* while under the statute the period of disability may not be extended beyond two hundred and forty weeks; that if petitioner should offer to bear the expense of a surgical operation, such expense would amount to a double indemnity unauthorized by the statute; and that the order with reference to the surgical operation is an unlawful effort to charge the surety company with the payment for surgical care long after the expiration of the period of ninety days following the date of the injury.

Section 12 of the Workmen's Compensation, Insurance and Safety Act provided, before its amendment in 1915, in part as follows: "Liability for the compensation provided by this act, in lieu of any other liability whatsoever, shall, without regard to negligence, exist against an employer for any personal injury sustained by his employees *by accident* arising out of and in the course of the employment." [The italics are ours.] Petitioner seeks to apply to the word "accident" as used in this statute the definition commonly used in cases relating to accident insurance. For example, *Clidero* v. *Scottish Accident Ins. Co.*, 29 Scot. L. Rep. 303, is cited to the effect that where a man is injured while doing just what he meant to do and an unexpected and injurious result happens, the occurrence is not an "accident." *Lehman* v. *Great Western Acc. Assn.*, 155 Iowa, 737, 42 L. R. A. (N. S.) 562, [133 N. W. 752], is also mentioned as authority for a similar limitation upon the meaning of the word "accident." That was a case in which the plaintiff had strained his side while he was bowling. He was denied relief. Recently this court has had occasion to declare the meaning of "accident" as used in policies of insurance, and in the opinion in the case of *Rock* v. *Travelers' Ins. Co.*, *ante*, p. 462, [156 Pac. 1029], the leading cases are cited and discussed. It was there said that "A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is

commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental. Measured by this rule, perhaps Petersen's injury was not due to "accident"; but we must remember that in all policies of accident insurance the contract has reference to bodily injuries caused solely by *external, violent,* and *accidental* means. In one of the opinions in *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686-706, [151 Pac. 398, 406], Mr. Justice Sloss, construing the very statute now before us, cited with approval the words of Lord Macnaghten in *Fenton* v. *Thorley & Co., Ltd.,* [1903] App. Cas. 443, as follows: "The expression 'accident' is used in the popular and ordinary sense of the word, as denoting an unlooked for mishap or an untoward event which is not expected or designed." In that case it was held that the murder of a night watchman was an "accident" within the purview of the act, and similar rulings will be found in *Trim Joint District School* v. *Kelly,* W. C. & Ins. Rep. [1914] 359; and *Western Metal Supply Co.* v. *Pillsbury, ante,* p. 407, [156 Pac. 491-496]. In the opinion in the Western Indemnity case the definition of "accident" as given in *Richards* v. *Travelers' Ins. Co.,* 89 Cal. 170-175, [23 Am. St. Rep. 455, 26 Pac. 762], is also quoted. The word is there defined as "a casualty—something out of the usual course of events, and which happens suddenly and unexpectedly, and without any design on the part of the person injured." In *Price* v. *Occidental Life Ins. Co.,* 169 Cal. 800-802, [147 Pac. 1175], the definition of the Richards case is cited with approval. When a more strict definition is required that fact arises, usually in insurance cases, under the necessities imposed by the peculiar language of policies. In England, under the former compensation act containing similar language to that used in our earlier statute, "injury by accident" has been given broad construction in accordance with the ordinary conception of the words. In *Fenton* v. *Thorley, supra,* the question of the proper interpretation of the phraseology of the act was given exhaustive consideration by the house of lords. The following language appears in the opinion:

"If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap, in ordinary parlance, would be

described as an accident. Anybody would say that the man had met with an accident in lifting 'a weight or trying to move something too heavy for him.''

In *Clover, Clayton & Co.* v. *Hughes*, 3 B. W. C. C. 275, the opinion (page 280) contains the following language:

''No doubt the ordinary accident is associated with something external; the bursting of a boiler, or an explosion in a mine, for example; but it may be merely from the man's own miscalculation, such as tripping and falling. Or it may be due both to internal and external conditions, as if a seaman were to faint in the rigging and tumble into the sea. *I think it may also be something going wrong within the human frame itself, such as the straining of a muscle, or the breaking of a blood vessel. If that occurred when he was lifting a weight, it would be properly described as an accident. So, I think, rupturing an aneurism when tightening a nut with a spanner may be regarded as an accident.''*

We are convinced that the statute intended to give to the words used their ordinary meaning, and that the expression ''accident arising out of and in the course of the employment'' is broad enough to include the injury received by Petersen. There is no contention that he was engaged in anything outside of his ordinary employment when he was injured, so we pass to the next contention of petitioner, that there is no substantial proof that the continuing disability had any connection with the accidental injury. Dr. Lohse, who testified upon this subject, gave it as his opinion that there was ''some other cause producing a persistence of his sciatica than the injury.'' At the hearing it was agreed that a medical referee be appointed to report upon the condition of Petersen. Dr. Hyman accordingly made a report to the effect that the patient exhibited the signs commonly associated with ''sciatica.'' The ''X-ray'' examination showed no lesion. The conclusions of Dr. Hyman were as follows: ''It is impossible to state the anatomic basis of the sciatic pain and the pain in the back complained of. Most of the signs of sacro-iliac trauma are lacking, *but the lesion cannot be excluded.* Spinal injury, of which there is no evidence, can produce the same complex. The patient should be given the benefit of an attempted reduction under anesthetic followed by immobilization in plaster including the right thigh. If the lesion be sacro-iliac slip, there will probably be complete

recovery in four weeks. If not, the immobilization may or may not help him." [The italics are ours.] Dr. Schaller, while declaring that certain symptoms pointed to psychoneurosis, also expressed the opinion that there were "a number of symptoms" which appeared to him to indicate "sacro-iliac trouble." As the patient had never suffered from sciatica before the accident, and as the original lesion was as indicated by the pain somewhere in the sacro-iliac region, there is some testimony to support the finding of the commission. In other words, the finding that the condition in which Petersen was found to be at the time of the hearing resulted from the accident was based upon a determination drawn from conflicting testimony, and we may not disturb it.

We do not think that the award is open to objection because the order fails in terms to limit the time of payment to two hundred and forty weeks. The statute itself makes that limitation, and of course the order cannot be effective beyond that period.

The optional award may be beyond the powers of the Industrial Accident Commission, and doubtless by accepting it the petitioner would be compelled to pay for surgical services rendered later than the ninety day period following the accident; but the answer to these objections is found in the fact that it *was optional*. The petitioner was not compelled to accept it nor to offer the suggested treatment to Petersen. The award is in complete form without reference to the second paragraph, which, so far as petitioner was concerned, was entirely optional.

It follows that the award must be affirmed and it is so ordered.

Shaw, J., Sloss, J., Lawlor, J., Henshaw, J., Lorigan, J., and Angellotti, C. J., concurred.