BLEVINS, BY NEXT FRIEND ETC. *v.* CONSUMERS ICE & FUEL CO. ET AL.

[No. 19,196. Filed February 11, 1959.]

*Dwight S. Beckner,* of New Castle, for appellant.

*Robert S. Hunter, Jr.,* of New Castle, *George B. Gavit, James V. Donadio* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for appellee.

KELLEY, J.—The Full Industrial Board denied appellant compensation. The Board found that appellant "did not sustain an accidental injury, arising out of and in the course of his employment with the defendant (appellee) herein." It further found "that on said date (January 24, 1956) the plaintiff (appellant) became afflicted with a ruptured aneurysm, which said

affliction was neither caused, aggravated or accelerated by his employment with the defendant herein, and was due solely to other causes." (Brackets and inserted words are ours.)

Appellant challenges said award as being contrary to law. Thus is presented for our determination the sole question of whether there was any evidence to sustain such award. In so determining, we may not weigh the evidence and we must consider only that evidence, and reasonable permissive inferences therefrom, which is most favorable to the findings and award appealed from.

Appellant did not testify and it is stated in his brief that is was impossible for him to testify in his own behalf.

It appears from the evidence that appellant was in the employ of appellee on and prior to January 24, 1956, and was engaged in delivering coal, by truck, to customers of appellee. On the morning of the aforesaid day, at about the hour of 7:00 A. M., appellant, driving a one-half ton pick-up truck, and one William West, driving a one ton truck, and one Raymond York, driving a two ton truck, reported to the office of appellee and there received their orders for deliveries and weighed in their trucks. From the office they drove to the coal piles to load up, arriving there about 7:15 A. M. or 7:18 A. M. The coal piles are situate in "a rather long and narrow" coal yard and, apparently, the coal piles are located variously on both sides of a generally north and south narrow driveway.

Said West drove his truck into the coal yard first and backed in for loading. The appellant followed and backed in his truck beside and to the south of West's truck and about fifteen feet therefrom. York brought his truck in last and backed it in about 100 feet north

of appellant's truck and on the opposite side of the narrow driveway. This arrangement of the trucks placed West's truck and York's truck between York and appellant.

As descriptive of the occurrence of events immediately following the aforesaid placement of the trucks, we quote, in *haec verba,* from the record testimony of said William West. He testified:

> "Well, I went on in the coal yard first and backed in. I got out of the truck. Logan (appellant) came in. He pulled over in the coal yard, backed in beside me and York went on through the coal yard. Blevins (appellant) got out of the truck, stepped out of the truck door and walked over to the side, walked up beside of the truck and leaned up on side of the frame and he hollered 'West' and I looked over and Blevins was scooting off the truck, sliding off the bed toward the front of the truck."

. . .

> "He fell on the ground and I run around to where he was at and I saw something was wrong and I hollered for York. York came running through the coal yard and went to the North side and called Mr. Dailey and First Aid."

Said witness West was then asked and answered as follows:

> "Q. Did Logan Blevins shovel any coal that morning?"
>
> "A. No."

The record discloses that appellant at the time aforesaid sustained a ruptured cranial aneurysm resulting in a 75% permanent partial impairment to him as a whole. The medical testimony was given by two qualified physicians. One, Dr. John R. Russell, a neurosurgeon, testified by deposition on behalf of appellant. The other, Dr. James S. McElroy, a practitioner of general surgery, was called by appellant.

Dr. Russell attended appellant on the day of the unfortunate occurrence upon appellant's admission to the Robert Long Hospital. He gave testimony that an aneurysm is most generally congenital; that in his opinion appellant's aneurysm was congenital; that an aneurysm is a thinned out spot on the wall of a blood vessel, usually an artery; that with the passage of time the pressure within the artery probably causes an increasing distention of the aneurysm and, in some cases, this distention, due to normal blood pressure, reaches a point where the aneurysm ruptures, resulting in hemorrhage; that the rupture of the aneurysm is almost surely directly related to the pressure of the blood within the aneurysm and the blood pressure may be suddenly, temporarily increased above normal limits so as to cause rupture of the aneurysm; that there may be no precipitating factors or there may be definite precipitating factors; that a very short strain such as heavy lifting might not elevate the blood pressure at all but prolonged straining action of heavy lifting might. In answer to a hypothetical question, assuming the material facts and circumstances above quoted from the testimony of William West, the witness said that the "actions as described would not be attributable as the cause of the rupture."

Dr. McElroy testified that he examined appellant on November 20, 1957; that this type of aneurysm (these in the brain) is a result of congenital weakness and as time goes on they tend to stretch and may rupture; that the strain of lifting, and other specified strains, usually raise the blood pressure some; that an aneurysm may rupture any time when one is standing or even sleeping but any strain adds a little more risk in its rupturing; that one may not know of the existence of an aneurysm; that he doesn't think you

can tell from the looks of an aneurysm whether or not it has been there since birth; that he was not so sure that each strain weakens the aneurysm and the hazard is the raising of the blood pressure, with more pressure inside the "tube," so to speak; that there may be a rupture without any exertion; and that shoveling coal could be a strain.

One of appellant's witnesses, the said Raymond York, said that before he was called over to where the appellant was, the latter had scooped "in the neighborhood of a quarter of a ton" of coal in his truck but that he did not see the appellant shoveling coal. When asked how he could testify that appellant did shovel coal if he did not see him doing so, the witness said "Who else would have throwed it on for him?"

Thus we observe conflicting evidence given by York and West as to whether the appellant shoveled any coal on the morning of January 24, 1956, prior to the rupture of the aneurysm with which he was afflicted. As before stated, we cannot weigh the evidence and must accept that which supports the award appealed from. It appears, therefore, that the rupture of the aneurysm sustained by appellant was not established by the evidence as attributable to, caused by, aggravated, or accelerated by any strain or activity of shoveling coal. It also appears from the testimony of Dr. Russell that the driving by appellant of the truck to the coal yard, his getting out of the truck, going to the rear thereof and returning to the side of the truck, without other exertion, would not be attributable as the cause of the rupture. No other exertion by appellant is disclosed by the record.

Appellant makes an unusual contention. Dr. Russell testified that when appellant was admitted to the hospital blisters were present on certain designated fingers

and the thumb of the right hand and they appeared to have been caused by some form of heat; that from the appearance of the burns it would be impossible to determine how the heat had been applied; and that they could possibly have been on the hands twenty-four hours prior to the time he observed them. He also said that the aneurysm may burst as a result of temporarily increased blood pressure during strong emotional excitement such as induced by pain or fright. There is no evidence in the record concerning any injury to appellant's hands at any time or place nor any evidence of anything that could have caused or resulted in any such injuries. There was testimony of others who had seen appellant's hands after he was stricken by the ruptured aneurysm that they observed no burns thereon at that time.

Appellant proposes that as he was at the place where his employment required him to be and since he was unable to testify, it must be assumed, under the presumption rule created and applied in cases of unexplained death or injury, that the burns arose out of and in the course of his employment; that the burns caused fright or pain which elevated his blood pressure, and resulted in the rupture of the aneurysm. The weakness of the proposal is obvious. There is no occasion to use the presumption where there is some evidence before the Board from which it can find that the alleged accident did not arise out of the employment. See Small, Workmen's Compensation Law, Sec. 6.10, note 53, page 138, and same section in the 1958 Supplement thereto. See, also, *Fleming* v. *Pyramid Coal Corporation* (1951), 122 Ind. App. 41, 45, 100 N. E. 2d 835. Here the Board had evidence before it of all the circumstances existing and occurring from the time appellant arrived at the office to get the orders until he collapsed

by the side of his truck. Said West and York were with appellant during the entire time and apparently were in position to and did relate everything that physically happened to appellant.

Appellant here appeals from an award adverse to him and in doing so assumes the burden of establishing either that the evidence most favorable to appellee discloses no substantial foundation for the award or that the evidence is of such character as to force us to a conclusion contrary to that reached by the Board. The question here is not whether there is evidence which would have sustained an award favorable to appellant, but whether there is evidence to sustain the award actually made. In our opinion there is ample evidence to sustain the award appealed from and, consequently, appellant has failed to carry his burden.

The award is affirmed.

NOTE.—Reported in 156 N. E. 2d 103.