INLAND STEEL COMPANY *v.* WILLIAM ALMODOVAR.

[No. 2-874A186. Filed March 31, 1977. Rehearing denied May 4, 1977. Transfer denied August 24, 1977.]

*Joseph E. Tinkham, James E. Schreiner, Travis, Tinkham & Schreiner,* of Hammond, *Karl J. Stipher, Robert J. Bremer, Baker & Daniels,* of Indianapolis, for appellant.

*Clifford and Murphy,* of Merrillville, for appellee.

WHITE, J.—The full Industrial Board of Indiana awarded appellee (hereafter "plaintiff") twenty-six weeks compensation for temporary total disability and an additional 175 weeks for thirty-five percent permanent partial impairment of the whole person for an alleged back injury which appellant (Inland) contends neither the evidence nor the facts found by the Board demonstrate is a "personal injury . . . by accident arising out of, and in the course of, the employment," as the Board held. Also, that if an award is justified, the percentage of impairment is less than that awarded. And, finally, that if the award is upheld, Inland should have credit for non-occupational group insurance benefits paid to plaintiff.

## I.

As to whether the plaintiff sustained personal injury by accident arising out of, and in the course of, his employment the Board initially found:

"That on the 30th day of March, 1972, plaintiff was in the employ of the defendant at an average weekly wage in excess of $120.00; that on said date plaintiff sustained an accidental injury arising out of and in the course of his employment when using a compressed-air hand tool and jerking, tugging and pulling on said air hose he felt a pain in his lower back; that defendant had knowledge of said accidental injury but did not furnish the statutory medical attention and supplies;

"That as a result of said accidental injury plaintiff was temporarily totally disabled for a period in excess of twenty-six (26) weeks from and after the 30th day of March, 1972.

"It is further found that plaintiff's condition has reached a permanent and quiescent state and plaintiff now has a thirty-five per cent (35%) permanent partial impairment to the man as a whole as a result thereof;"

In response to our request for greater specificity the Board found that:

"[O]n the 30th day of March, 1972, plaintiff was an employee of defendant, working as a wrapper in No. 3 cold strip, at an average weekly wage in excess of $120.00; that on said date while working within the scope of his duties for the defendant plaintiff experienced an identifiable event which consisted of pulling an air hose which was 'caught between the conveyor' at which time his back suddenly gave way—in his lower back and through his legs; that such identifiable event is found to be an accident arising out of and in the course of his employment by defendant, which said accident is found to have resulted in injuries to plaintiff's lower back."

Inland contends these findings are insufficient in that the Board has failed to make "any specific finding of fact causally relating [plaintiff's] first awareness of his back ailment with his work for Inland (e.g., that [plaintiff] was putting forth an unusual exertion occasioned by an increased work load."[1] Inland also claims there is no evidence to support such a finding had it been made. It contends that the absence of such evidence means that plaintiff has failed to prove that his injury arose out of his employment. Inland's authority is *United States Steel* v. *Dykes* (1958), 238 Ind. 599, 613, 154 N.E.2d 111, 119, which said:

"The mere showing that he was performing his usual routine everyday task when he suffered a heart attack does not establish a right to workmen's compensation because there was no event or happening beyond the mere employment itself."

Standing alone, that statement lends support to Inland's position. But after quoting Small WORKMEN'S COMPENSATION LAW OF INDIANA, § 6.20, p. 151, which recited fact situations in which compensation had been allowed, *Dykes* also notes:

"In each of the above instances the fatal heart attack was preceded by some type of untoward or unexpected incident, or there was evidence of the aggravation of a previously

---

1. Inland's Supplemental Brief, p. 2.

deteriorated heart or blood vessel.[2] No such incident is shown by the evidence in the record here.

By the use of the disjunctive "or", it is clear that *Dykes* is not saying that a fatal heart attack or any other injury must always be preceded by "some type of untoward or unexpected incident" (such as an unusual exertion occasioned by an increased work load) in order to be compensable. It expressly acknowledges that there is an alternative: "evidence of the aggravation" of a preexisting condition. But to emphasize that the alternative was not proved in *Dykes,* the opinion continued:

"Under the evidence in this case decedent's fatal heart attack might have happened while he was working, driving his car, sitting or even sleeping. It happened while he was working at his usual occupation; and in such event it could be said that his heart failed because it could not handle the load then demanded of it. In our opinion it was not the intention of the Legislature that such happening be considered a 'death by accident arising out of and in the course of the employment.' Acts 1929, ch. 172, as amended, being § 40-1202, Burns' 1952 Replacement.

"Neither is it what the courts had in mind when they said that if an accident aggravates a pre-existing condition the resulting harm is compensable. *Heflin* v. *Red Front Cash & Carry Stores, Inc., supra* (1948), 225 Ind. 517, 521, 522, 75 N.E.2d 662." (238 Ind. at 611-612.)

The facts at bar are more analogous to those in *Heflin* than to those in *Dykes.* In *Heflin* the plaintiff-employee was a chain food store manager who had had a hernia all his life. His undisputed testimony was that he was helping unload potatoes from a truck through a store window when

"about the fourth [bag] I felt this hernia give down completely. * * * I felt a sharp pain and it protruded to about three times its normal size.
* * *

"2. See *Haskell & Barker Car Co.* v. *Brown, et al.* (1918), 67 Ind. App. 178, 117 N.E. 555; *Indian Creek Coal etc. Co.* v. *Calvert, et al.* (1918), 68 Ind. App. 474, 119 N.E. 519, 120 N.E. 709; *Utilities Coal Co.* v. *Herr, et al.* (1921), 76 Ind. App. 312, 132 N.E. 262; *Mansfield Eng. Co.* v. *Winkle* (1921), 77 Ind. App. 237, 133 N.E. 390; *Carnegie-Illinois Steel Corp.* v. *Flack* (1946), 116 Ind. App. 427, 64 N.E.2d 167; *Youngstown*

"I had unloaded potatoes before for about 12 years. I had unloaded them in the same way. Nothing unusual happened, such as the bag slipping or falling. . . ." (225 Ind. at 519-520.)

The *Heflin* opinion does not comment on the fact that the injury occurred while the employee was doing what he had done for about twelve years and while he was doing it in the same way and without any unusual happening other than the pain and the protrusion. What *Heflin* does say about an accidentally aggravated preexisting condition (apparently with approval of the *Dykes* court) is this:

"Indiana long ago adopted the majority rule, that where an employee afflicted with disease receives a personal injury under such circumstances that he might have obtained compensation under a Workmen's Compensation Act on account of the injury had there been no disease involved, but the disease is materially aggravated or accelerated by the injury, resulting in disability or death earlier than would otherwise have occurred, and the disability or death does not result from the disease alone progressing naturally as it would have done under ordinary conditions, but the injury, aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the Workmen's Compensation Act. *In re Bowers* (1917), 65 Ind. App. 128, 133, 134, 116 N.E. 842, and authorities there cited; *Indian Creek Coal, etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N.E. 519, 120 N.E. 709; *Puritan Bed Spring Co.* v. *Wolfe* (1918), 68 Ind. App. 330, 120 N.E. 417; *Krenz* v. *Ferguson Coal Company* (1926), 85 Ind. App. 347, 154 N.E. 35; *State* v. *Gageby* (1933), 95 Ind. App. 681, 184 N.E. 190; *The Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 10 N.E.2d 747.

"In the case of *Haskell, etc. Car Co.* v. *Brown* (1918), 67 Ind. App. 178, 117 N.E. 555 this court defined the word 'accident' as used in our Workmen's Compensation Act, as 'any unlooked for mishap or untoward event not expected or designed.'

"In *Indian Creek Coal, etc., Co.* v. *Calvert, supra,* this court, after an exhaustive review of English and American cases, approved the Haskell definition and further held the term 'Personal injury,' as used in the Workmen's Compen-

*Sheet & Tube Co. et al.* v. *Tucak, et al.* (1946), 116 Ind. App. 612, 66 N.E.2d 619; *Rauh & Sons Fertilizer Co.* v. *Adkins, et al.* (1956), 126 Ind. App. 251, 129 N.E.2d 358." (238 Ind. at 611.)

sation Act, had reference not to some break in some part of the body or some wound thereon, but rather to the consequences or disability that results therefrom. To the same effect—*Puritan Bed Spring Co.* v. *Wolfe, supra; Terre Haute, etc., Mfg. Co.* v. *Wehrle* (1921), 76 Ind. App. 656, 132 N.E. 698; *The Studebaker Corp.* v. *Jones, supra.*" (225 Ind. 521-522.)

In the present case we have findings by the Board to the effect that plaintiff's back suddenly gave way while he was jerking, tugging, and pulling on an air hose that was "caught between the conveyor", and that the incident was an injury by accident arising out of and in the course of his employment. This amounts to a finding that the jerking, tugging and pulling injured plaintiff's back. Inland makes no argument to the contrary, contending only that because this jerking, tugging and pulling was not an unusual exertion occasioned by an increased work load, the injury (which it refers to as his "first awareness of his back ailment") is not causally related to his work for Inland. The medical evidence of plaintiff's preexisting back pathology is sufficient to sustain the implied finding that plaintiff's injury is an aggravation of that preexisting condition. In other words, this case, unlike *Dykes,* is an example of "what the courts had in mind when they said that if an accident aggravates a preexisting condition the resulting harm is compensable." (*Dykes, supra,* 238 Ind. at 612.)

At bar, the dissent takes a different tack, opining that there was no "accident", apparently because plaintiff "was performing a normal task of his every day employment routine at Inland" when he sustained his injury. The dissent does not tell us what sort of an "untoward or unexpected event" would constitute an accident nor why the untoward and unexpected giving way of plaintiff's back is not an accident here as was the untoward and unexpected protrusion of the hernia in *Heflin.* Implied, however, is the proposition that if he had been performing some task which was out of the ordinary in that it required unusual exertion his injury would have been "by accident". Or, as the dissent's author said in *Rivera* v.

*Simmons* (1975), 164 Ind. App. 381, 329 N.E.2d 39, 42, in epitomizing his understanding of the holding in *Dykes*, "for an injury to be compensable, some unexpected and untoward incident above and beyond the employee's routine or usual employment must take place". The two judges who concurred in the *Rivera* result did not concur in that interpretation of *Dykes*. They concurred in affirming the Board's denial of compensation because there was "no finding . . . of facts which would lead inevitably to the conclusion that Rivera's injury arose out of his employment". (329 N.E.2d at 44.) Thus, with respect to what constitutes an "accident" as that word is used in the phrase "personal injury or death by accident arising out of and in the course of the employment" (Ind. Code § 22-3-2-2), the concurring opinions in *Rivera* and the prevailing opinion in *Estey Piano Corporation* v. *Steffen* (1975), 164 Ind. App. 239, 328 N.E.2d 240, are controlling precedent in this district. (Although the writer's *Estey* concurrence was "in result" he now concurs in all that Judge Sullivan said in his prevailing opinion.)

Part I of the *Estey* opinion deals with the appellant-employer-defendant's defense that plaintiff-employee-appellee had "shown no 'accident' within the meaning of the compensation act because the evidence does not show an 'untoward or unexpected event' such as a 'slip, trip or unexpected event.' " (328 N.E.2d at 242.) In exposing the fallacy of that defense, which is based on the erroneous, but oft-asserted, notion that an accident external to the body of the injured employee is essential to an "injury or death by accident" within the meaning of the workmen's compensation act, a great deal was said about what is and what is not an "accident". In quoting from *Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 275-276, 10 N.E.2d 747, 749, and otherwise, *Estey* laid stress on the idea that one of the characteristics of an accident is that of a definite occurrence or a specific and definable event. Consequently one can probably find a phrase, clause, or sentence

therein which, taken out of context, supports the conclusion reached by the Board in the instant case that

> "plaintiff experienced an identifiable event which consisted of pulling an air hose which was 'caught between the conveyor' at which time his back suddenly gave way—in his lower back and legs; that such identifiable event is found to be an accident arising out of and in the course of his employment. . . ."

While by itself an "identifiable incident" is not necessarily an accident, the whole episode described in the Board's findings is "an injury by accident" within the meaning of that clause in the Workmen's Compensation Act. The fact that there is an identifiable (i.e., "specific") incident to which a plaintiff's injury can be causally connected has usually been a requirement of its being held compensable under the Workmen's Compensation Act,[2] as distinguished from gradually developing disablements covered under the Occupational Diseases Act. But as a gradual development alone does not make a disease compensable under the Occupational Diseases Act so an identifiable incident alone does not make an injury compensable under the Workmen's Compensation Act. Under either act the occupational disease or injury must also arise out of and in the course of the employment. Additionally, to be compensable under the Workmen's Compensation Act, the injury must be "by accident". But this does not mean that the injury must be the result of an accident external to the body of the injured employee. *Indian Creek Coal etc. Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N.E. 519, contains an exhaustive review (as was noted in the quotation from *Heflin, supra*) of English and American cases and authorities defining the word "accident" as used in workmen's compensation acts. At page 491 the *Indian Creek* court said:

---

2. Examples of exceptions are footnoted in Dean Small's comment to the effect that prior to the 1937 enactment of Indiana Occupational Diseases Act, "The Industrial Board and the Appellate Court had strained for years to fit such ailments as bursitis . . . [etc.] into the coverage of the Workmen's Compensation Act." Small, WORKMEN'S COMPENSATION LAW OF INDIANA 420-21, nn. 1, 2 and 3.

"In an interesting article in the 25 Harvard Law Review, p. 328 *et seq.*, the author develops from the decided cases that the term 'by accident' has been consistently construed to include two different ideas—that of unexpectedness, and that of injury sustained on some definite occasion. Developing also that the English cases are steadily drifting towards a spirit of increased liberality in favor of the injured workman, he says, at page 340: 'Since the case of *Fenton* v. *Thorley (supra)* [ (1903), 19 T.L.R. 684, 5 W.C.C. 1][3] nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. *It is no longer required that the causes external to the plaintiff himself, which contribute to bring about the injury, shall be in any way unusual; it is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected.* The test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing. What was actually probable or even inevitable because of circumstances unknown to the sufferer is even more unimportant. The test is purely subjective to the injured workman.' " (Our emphasis.)

Small, WORKMEN'S COMPENSATION LAW OF INDIANA 98, § 5.2 is to the same effect. The 1976 Supplement, § 5.1, p. 39-43, summarizes recent cases (some of which do not follow the *Indian Creek* concept of "accident") and suggests that *Estey* and *Rivera* have created a need for clarification of our definition of the term "accident".

Perhaps it is a mistake to attempt to define "accident" when what we are concerned with is not the definition of the word standing alone but the concept expressed in the phrase: "injury by accident". If we accept, which we do, the concept expressed in *Indian Creek* then "injury by accident" is the

3. In *Fenton* v. *Thorley* the British House of Lords reversed the Court of Appeal and the county court which had held a hernia noncompensable. One Lord noted: "There was no evidence of any slip or wrench, or sudden jerk. It may be taken that the injury occurred while the man was engaged in his ordinary work, and in doing or trying to do the very thing he attempted to accomplish." Another said "No one out of a law court would ever hesitate to say that this man met with an accident; and when all is said, I think the use of the word is perfectly right." (68 Ind. App. at 484 and 485.)

equivalent of "accidental injury". Which is to say that "injury by accident" is not the equivalent of "injury caused by an accident" or "injury resulting from an accident". As the Harvard Law Review article quoted, *supra,* in the excerpt from *Indian Creek* says, "[t]he test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing."

Neither our affirmance of the Board's award of compensation nor the reasoning by which we reach that result eliminates the necessity of an accident as the dissent charges. That charge can be true only if "injury or death by accident" in workmen's compensation law is to be understood as death or injury is defined in accident insurance policies, e.g., "loss of life . . . as a result . . . of bodily injuries effected solely through external, violent and accidental means." *Freeman* v. *Commonwealth Life Ins. Co.* (1971), 149 Ind. App. 211, 212, n. 2, 271 N.E.2d 177, 178, n. 2; transfer denied with opinion (1972), 259 Ind. 237, 239, 286 N.E.2d 396, 397. As *Indian Creek* warns us:

> "The meaning assigned to the word 'accident' as used in compensation acts, must be distinguished from its meaning as used in accident insurance policies. *Southwestern Surety Ins. Co.* v. *Pillsbury, supra; Robbins* v. *Original Gas Engine Co.* (1916), 191 Mich. 122, 157 N.W. 437; *Fenton* v. *J. Thorley & Co.* (1903), 19 T.L.R. 684, 5 W.C.C. 1." (68 Ind. App. at 483.)

The evidence and the findings are sufficient to support an award of compensation to plaintiff.

## II.

Two physicians who had examined plaintiff testified that he had sustained a permanent partial impairment. One estimated the impairment to be fifteen percent of the man as a whole; the other that plaintiff had sustained "a permanent loss of eighty percent of the function of

both lower extremities." (R. p. 97). The Board found the impairment to be thirty-five percent of the man as a whole. Inland contends that finding is based on mere guess, conjecture and surmise in that the testimony of the doctor who estimated the impairment at fifteen percent is the only competent evidence on the question. The argument in support of that contention goes to the weight of the conflicting evidence which is a question of fact for the Board alone. We cannot, as Inland requests, instruct the Board to enter an amended award based on fifteen percent permanent partial impairment to the man as a whole. To do so would be to invade the province of the Board. *Cole* v. *Sheehan Construction Co.* (1944), 222 Ind. 274, 280, 53 N.E.2d 172, 175.

### III.

When this case came on for hearing before the single Board member, the parties made the following stipulation:

"MR. SCHREINER: [Defendant's Atty.]
We have a stipulation. * * *

That [Employee] * * * received fifty-two (52) weeks of disability from April 8, 1972, to April 6, 1973. * * * at $85.00 per week for which defendant is entitled to credit at the appropriate rate against disability and/or impairment should the Board find liability herein;

That plaintiff received nonoccupational group insurance, medical and hospital benefits as follows: St. Catherine Hospital, $2,906.95 * * * Dr. Allen Kaufman, $1,267.00; Dr. Marquines, $120.00; Dr. Keskin, $165.00; Calumet Orthopedics, $71.-40; and that defendant is entitled to credit for said payments should the Board find liability herein.

"MEMBER: You so stipulate?

"MR. MURPHY: [Plaintiff's Atty.]
I do, yes."

Record pp. 38-40.

Inland contends the award fails to give it the credits which the parties stipulated in event of a finding for the plaintiff and that if we determine that plaintiff has proven a compensable injury we should nevertheless reverse with instructions to enter an amended award giving Inland its stipulated credits.

The precise message of plaintiff's response is clouded by ambiguities which are probably the result of typographical errors. We are inclined to believe, however, that he does not claim that he should be allowed to retain both non-occupational disability benefits and workmen's compensation. His response implies that it was not Inland but some insurance company which paid these non-occupational benefits and he "desires that he be indemnified in the event the non-occupational carrier seeks recovery." (Appellee's brief, page 17.)

If Inland, and not some insurance company, paid these "non-occupational" benefits to or on behalf of plaintiff pursuant to some contract which gives Inland a right to deduct them from its liability to plaintiff under this compensation award then it may be that the Board has jurisdiction to make provision therefor in the award. But if the benefits were paid by an insurance company which is not Inland's workmen's compensation carrier (if, indeed, it is carrier-insured, rather than self-insured) it appears to be, without question, beyond the Board's jurisdiction to attempt to adjudicate plaintiff's liability or non-liability to such insurer. The facts stipulated are insufficient to confer jurisdiction on the Board to adjudicate whether Inland should have credit for the payments the parties have stipulated were made.

We affirm the award without prejudice to Inland's right, if any, or the right of Inland's workmen's compensation insurer, if any, to claim credit for payments previously made to plaintiff in whatever tribunal or agency may have jurisdiction.

Affirmed.

Sullivan, J., concurs; Buchanan, P.J., dissents with opinion.

## DISSENTING OPINION

BUCHANAN, P.J.—I dissent from affirmance of the award because there was no "accident."[1]

The evidence and the findings conclusively indicate to me that plaintiff (Almodovar) was performing the normal task of his every day employment routine at Inland. He had worked there for nine (9) years and had never previously experienced a back problem.

His job as a "wrapper" of bands and coils of sheet metal required him to continuously use a tool called a stretcher, which had to be lifted and maneuvered as it became necessary to fasten steel bands around coils of steel as they moved at floor level along a conveyor system. Attached to this tool (stretcher) was an air hose, about seventy-five (75) feet in length, which became entangled in and around the conveyor seven or eight or more times a day, requiring the wrapper to pull on the hose to free it. Thus, the plaintiff in the performance of his duties as a wrapper was performing his normal duties when he was required to jerk the air hose free from the conveyor.

All the findings say is that this is an "identifiable event," which indeed it is, but it is not an *accident* as the evidence and findings clearly indicate.

This is just another "lifting" case, in which there is no "untoward or unexpected event," and should fall in the rule of numerous cases so holding. *Rivera* v. *Simmons Co.* (1975), 164 Ind. App. 381, 329 N.E.2d 39; *Shaffer* v. *Indiana Gas & Chem. Corp.* (1965), 137 Ind. App. 471, 209 N.E.2d 919; *Campbell* v. *Colgate-Palmolive Co.* (1962), 134 Ind. App. 45, 184 N.E.2d 160; *City of Anderson* v. *Borton* (1961), 132 Ind. App. 684, 178 N.E.2d 904; *Douglas* v. *Warner Gear* (1961),

---

1. My analysis of the cases as to what constitutes an "accident" for purposes of awarding Workmen's Compensation is set forth in my Concurring Opinion in *Estey Piano Corporation* v. *Steffen* (1975), 164 Ind. App. 239, 328 N.E.2d 240.

131 Ind. App. 664, 174 N.E.2d 584; *Bundy* v. *Concrete Ready Mix Co.* (1960), 130 Ind. App. 542, 167 N.E.2d 477; *Arford* v. *State* (1959), 129 Ind. App. 312, 156 N.E.2d 401; *Blevins* v. *Consumers Ice & Fuel Co.* (1959), 129 Ind. App. 257, 156 N.E.2d 103.

Reliance by the majority on *Heflin* v. *Red Front Cash & Carry Stores, Inc.* (1948), 225 Ind. 517, 75 N.E.2d 662, is indicative of the controversy that centers around the word "accident." It is one of a line of cases[2] which virtually eliminates the necessity of an "untoward or unexpected event."

My views on this subject are set forth in my reluctant concurring opinion in *Estey Piano Corporation* v. *Steffen, supra,* and need not be repeated here except to say, as I concluded there, that the cases interpreting an "accident arising out of or in the course of employment" lead to the conclusion that the word "accident" has been elasticized to the breaking point. In the search for extension of employers' liability for employment-connected injuries, the law on this subject has become hopelessly conflicting and confused . . . and would appear to have gone far beyond the original intent of the framers of the Workmen's Compensation Act.

"Accident" as a word of art in Workmen's Compensation law has become as mysterious as the Loch Ness monster . . . and awaits the attention of the Supreme Court or the Legislature.

The holding of the majority that there is an accident under these circumstances appears to me to be contrary to *United States Steel Corporation* v. *Dykes* (1958), 238 Ind. 599, 154

2. *Anaconda Aluminum Co.* v. *Aue* (1964), 136 Ind. App. 463, 202 N.E.2d 403; *Lock-Joint Tube Co.* v. *Brown* (1963), 135 Ind. App. 386, 191 N.E.2d 110 (criticizing *United States Steel Corp.* v. *Dykes, infra*); *United States Steel Corp.* v. *Douglas* (1955), 125 Ind. App. 212, 123 N.E.2d 899; *Slaubaugh* v. *Vore* (1953), 123 Ind. App. 497, 110 N.E.2d 299; *American Maize Products Co.* v. *Nichiporchick* (1940), 108 Ind. App. 502, 29 N.E.2d 801; *The Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 10 N.E.2d 747; *Morgan Packing Co.* v. *Monroe* (1934), 99 Ind. App. 321, 192 N.E. 320; *General American Tank Car Corp.* v. *Weirick* (1921), 77 Ind. App. 242, 133 N.E. 391; *Indian Creek Coal & Mining Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N.E. 519.

N.E.2d 111, which is the last Indiana Supreme Court word as to what constitutes an accident. The closing paragraph reads:

> The mere showing that he was performing his usual routine everyday task when he suffered a heart attack does not establish a right to workmen's compensation because there was no event or happening beyond the mere employment itself. 238 Ind. at 613, 154 N.E.2d at 119.

The award should be reversed.

NOTE.—Reported at 361 N.E.2d 181.