# FOR PUBLICATION



**FILED**

Oct 31 2014, 9:49 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL A. WILKINS**
Broyles Kight & Ricafort, PC.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**STACY L. HANEFELD**
**KATHRYN ELIAS CORDELL**
Hall, Render, Killian, Heath & Lyman, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.H., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1404-CT-174 |
| | ) | |
| ST. VINCENT HOSPITAL AND HEALTH | ) | |
| CARE CENTER, INC., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

**APPEAL FROM THE MARION SUPERIOR COURT**
The Honorable John F. Hanley, Judge
Cause No. 49D11-1103-CT-8520

**October 31, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

J.H. appeals the trial court's grant of summary judgment in favor of St. Vincent Hospital and Health Care Center, Inc. ("St. Vincent") on J.H.'s complaint alleging invasion of privacy, breach of statutory duty, negligence, and intentional infliction of emotional distress. J.H. presents five issues for our review, which we consolidate and restate as whether there are genuine issues of material fact precluding summary judgment with respect to each of J.H.'s claims.

We affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On August 23, 2010, J.H. presented to the St. Vincent Stress Center ("the Stress Center") in Indianapolis for treatment of depression. J.H. reported that he was contemplating suicide. Daniel Jackson, a Stress Center employee, conducted an initial assessment of J.H. and determined that he qualified for admission to the Stress Center. Jackson asked J.H. to fill out various forms prior to his admission, including an Authorization to Disclose Health Information ("the Authorization"). J.H., who had intentionally not communicated with members of his family about his mental illness, stated that he did not want the Stress Center to disclose his health information to anyone. But Jackson asked J.H. to name an emergency contact on the Authorization. Jackson assured J.H. that the Stress Center would contact the named emergency contact only if a true emergency existed, such as if J.H. were to suffer a heart attack. J.H. reluctantly agreed to name his grandmother, E.H., as his emergency contact.

2

Upon J.H.'s admission to the Stress Center, a staff member found a live bullet in J.H.'s pocket and confiscated it. J.H. then stated that he "had a gun in [his] pocket,"[1] but he refused to "answer anymore" questions about a gun because "someone would come kicking in the door." Appellant's App. at 86.

After J.H.'s admission to the Stress Center, Leigh Epperson, a Stress Center employee, called E.H. and left a voice mail on her answering machine. In the message, Epperson stated that she was calling from the St. Vincent Stress Center and that she wanted to inform E.H. that J.H. was "hospitalized and he is safe."[2] Id. at 398. When E.H. heard the voice mail that evening, she called the Stress Center and asked for Epperson, but Epperson had left for the day. E.H. then called her son and other family members to see if anyone had any information about J.H., but no one did. E.H. then called the Stress Center again and spoke to an employee, who told E.H. that J.H. had been admitted to the Stress Center and that he was safe. E.H. was told that she could not speak to J.H., but the employee agreed to let J.H. know that E.H. had called for him.

When J.H. learned that E.H. had contacted the Stress Center, he was very upset. J.H. is very close with E.H., and he especially did not want her to know about his mental illness. J.H. was so angry about the Stress Center having contacted E.H. that he filled out the forms necessary for his discharge, but he decided to stay for further treatment. A few

---

[1] J.H. did not have a gun in his pocket at that time.

[2] St. Vincent designated evidence suggesting that it had contacted E.H. out of concern that J.H. might have kept a gun at her house or that he otherwise posed a threat to E.H. or others. But neither the voice mail left by Epperson nor the ensuing phone call between E.H. and another Stress Center employee referenced a gun or threat posed by J.H.

days later, after his discharge from inpatient treatment at the Stress Center, J.H. continued outpatient treatment there.

On September 7, while undergoing outpatient treatment at the Stress Center, J.H. sought emergency medical treatment at St. Vincent Hospital's emergency room. J.H. reported that he was "feeling suicidal [and] out of control." Id. at 458. In an initial assessment, J.H. told emergency room staff that he was at the Stress Center two weeks prior "and [his] family learned about [his] admission and now [he] feels shame [and] anger[.]" Id. J.H. was transported to the Stress Center and admitted there, but he was discharged the same day.

On March 11, 2011, J.H. filed a complaint alleging that St. Vincent violated J.H.'s right of privacy by disclosing his confidential medical information to E.H. without his authorization; breached its statutory duty to maintain the confidentiality of all of J.H.'s mental health information; was negligent in training and supervising its employees regarding the protection of his confidential medical information and was negligent in making unauthorized disclosures of his medical condition and treatment; and intentionally inflicted emotional distress upon him. On July 8, 2013, St. Vincent moved for summary judgment. J.H. filed a memorandum in opposition to summary judgment. Following a hearing, the trial court granted St. Vincent's summary judgment motion. This appeal ensued.

**DISCUSSION AND DECISION**

Our supreme court recently reaffirmed our standard of review in summary judgment appeals:

4

We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Williams v. Tharp, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." Id. (internal citations omitted).

The initial burden is on the summary-judgment movant to "demonstrate[] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. Id. at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." McSwane v. Bloomington Hosp. & Healthcare Sys., 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

Hughley v. State, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to Hughley).

We emphasize that summary judgment is a "high bar" for the moving party to clear in Indiana. Id. at 1004. "In particular, while federal practice permits the moving party to merely show that the party carrying the burden of proof [at trial] lacks evidence on a necessary element, we impose a more onerous burden: to affirmatively 'negate an opponent's claim.'" Id. at 1003 (quoting Jarboe v. Landmark Comm. Newspapers of Ind., Inc., 644 N.E.2d 118, 123 (Ind. 1994)). Further:

Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a "blunt . . . instrument" by which the non-prevailing party is prevented from having his day in court. We have therefore cautioned that summary judgment is not a summary trial and the Court of Appeals has often rightly observed that it is not appropriate merely because the non-movant appears unlikely to prevail at trial. In essence, Indiana consciously errs on the side of letting marginal

5

cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

Id. (citations and some quotations omitted; omission original to Hughley).

Here, J.H. maintains that genuine issues of material fact exist precluding summary judgment on each of the claims he asserts in his complaint. We address each claim in turn.

Invasion of Privacy by Public Disclosure

J.H. first contends that St. Vincent is not entitled to summary judgment on his claim alleging invasion of privacy by public disclosure. The general tort, invasion of privacy, includes four distinct injuries: (1) intrusion upon seclusion, (2) appropriation of likeness, (3) public disclosure of private facts, and (4) false-light publicity. Doe v. Methodist Hosp., 690 N.E.2d 681, 684 (Ind. 1997) (plurality opinion) (citing Restatement (Second) of Torts § 652A (1977)). The public disclosure of private facts, described by the Second Restatement, occurs when a person gives "'publicity'" to a matter that concerns the "'private life'" of another, a matter that would be "'highly offensive'" to a reasonable person and that is not of legitimate public concern. Id. at 692 (quoting Restatement (Second) of Torts § 652D). As explained in Doe, under the Restatement view adopted by most courts, a communication to a single person or to a small group of persons is not actionable because the publicity element requires communication to the public at large or to so many persons that the matter is "'substantially certain to become one of public knowledge.'" Id. (quoting Restatement (Second) of Torts § 652D cmt. a).

Here, J.H. alleges that St. Vincent communicated information about his admission to the Stress Center to a single person, so it is not actionable. See id.; see also Dietz v.

Finlay Fine Jewelry Corp., 754 N.E.2d 958, 966 (Ind. Ct. App. 2001) (holding communication to two people not actionable). Moreover, in support of summary judgment, St. Vincent designated evidence including J.H.'s response to an interrogatory asking him to "[i]dentify all actions by Defendant that Plaintiffs [contend] constitute publicity[.]" Appellant's App. at 276. J.H. responded that he "objects to the term 'publicity' as contained in this Interrogatory, as Plaintiff has not alleged 'publicity.'" Id. Because J.H. explicitly states that no publicity occurred here, and publicity is an essential element of his invasion of privacy claim, St. Vincent is entitled to summary judgment on this claim.

### Breach of Statutory Duty Under Indiana Code Section 16-39-2-6

J.H. next contends that a genuine issue of material fact exists whether St. Vincent breached its statutory duty under Indiana Code Section 16-39-2-6, which provides in relevant part that, without the consent of the patient, the patient's mental health record may only be disclosed if appropriate under one of sixteen enumerated circumstances. It is undisputed that none of the sixteen circumstances apply here. But in support of summary judgment, St. Vincent argued that J.H. consented to the release of information to his grandmother. St. Vincent also argued that it did not disclose J.H.'s "mental health record," which is defined in relevant part as "recorded or unrecorded information concerning the diagnosis, treatment, or prognosis of a patient receiving mental health services or developmental disability training." Ind. Code § 16-18-2-226. Instead, St. Vincent maintains that when it informed E.H. that J.H. had been admitted at the Stress Center and was safe it did not give information concerning his diagnosis, treatment, or

7

prognosis.   And St. Vincent asserts that, even if it did breach its statutory duty, that breach was justified as a matter of law because of an apparent and emergent threat to E.H. or others.   We address each contention in turn.

In support of its first contention, that J.H. consented to the disclosure of information regarding his admission to the Stress Center, St. Vincent designated a signed Release of Information ("Release form") and a signed Authorization to Disclose Health Information ("Authorization form").   The Release form provides in relevant part as follows:

> The Hospital may disclose medical information about you to a friend or family member who is involved in your medical care.  If admitted, unless you tell the Hospital otherwise, the Hospital will list in the patient directory, your name, location in the Hospital, your general condition (good, fair, etc.) and your religious affiliation, and will release all but your religious affiliation to anyone who asks about your name. . . .

Appellant's App. at 102 (emphases added).   At the conclusion of that paragraph, the form included a box to be checked if the patient opted to keep St. Vincent from releasing said information "to those requesting it."   Id.  J.H. did not check the "No" box on the form.

The Authorization form provides in relevant part as follows:

I (the undersigned) hereby authorize St. Vincent Employee Assistance Program[3] to disclose/obtain the following identified information:

* * *

INFORMATION TO BE RELEASED/OBTAINED (limit request to the minimum necessary)

* * *

Other[:]  emergency contact

* * *

_____

[3] J.H. was not a St. Vincent employee.

8

RELEASE INFORMATION TO/FROM:
Name:  E.H.
Phone Number:  [XXX-XXXX]
Address: . . . .
Purpose of disclosure:  emergency contact

Id. at 96.

But St. Vincent's designated evidence does not negate J.H.'s claim that he did not consent.  The plain language of the Release form states that certain information will be given to family members "involved in your medical care" and to anyone who inquired by name about the patient.  Id. at 102.  St. Vincent did not designate any evidence showing that E.H. was involved in J.H.'s medical care, and E.H. did not initiate the contact with St. Vincent—St. Vincent's contact with her was unsolicited.  Accordingly, the Release form did not authorize St. Vincent to contact E.H. regarding J.H.'s admission to the Stress Center.

Likewise, the plain language of the Authorization form states that the only disclosure that would be made would be for the "purpose" of an "emergency contact." Id. at 96.  This court has observed that an "emergency" is an unexpected condition or set of circumstances requiring immediate attention.  Beckerman v. Gordon, 614 N.E.2d 610, 613 (Ind. Ct. App. 1993), trans. denied.  St. Vincent designated evidence showing that an alleged emergency existed with respect to J.H. because he had bullets on his person and had alluded to possession of a gun outside of the Stress Center.  But that evidence is completely unavailing in light of the designated evidence that neither of St. Vincent's communications with E.H. pertained to that alleged emergency or otherwise indicated to E.H. that an emergency existed at all.  Both in the voice mail left for E.H. and during

9

E.H.'s subsequent phone call with a Stress Center employee, no information touching on anything that could be interpreted to be of an emergent nature was given or obtained. E.H. was told only that J.H. was a patient at the Stress Center and that he was safe. Accordingly, St. Vincent has not made a prima facie showing that it communicated with E.H. because of an emergency, which was the only permitted disclosure under the Authorization form.

Next, St. Vincent's contends that the information it disclosed to E.H. is not encompassed by Indiana Code Section 16-18-2-226. Again, that statute identifies the prohibited information as that "concerning the diagnosis, treatment, or prognosis of a patient receiving mental health services[.]" I.C. § 16-18-2-226. A thing "concerns" something else if it relates or refers to it. Webster's 3d New Int'l Dictionary 470 (2002). That a patient has been admitted to a mental health facility is, on its face, information relating and referring to the treatment of a patient receiving mental health services. We hold that, as a matter of law, St. Vincent was prohibited from disclosing that information to E.H. absent J.H.'s consent, and St. Vincent has not made a prima facie showing that it had his consent.

Finally, St. Vincent contends that, even if it breached its statutory duty to J.H., any statutory violation was justified or excused. But St. Vincent's argument on this issue is identical to its argument that it contacted E.H. pursuant to an alleged emergency. As explained above, St. Vincent's designated evidence on this question is in direct conflict and, as such, it has not made a prima facie showing that its conduct was excused. Thus,

10

the trial court erred when it granted summary judgment in favor of St. Vincent on J.H.'s breach of statutory duty claim.

Negligence

J.H. next contends that a genuine issue of material fact exists whether St. Vincent was negligent in failing to "properly train and supervise its employees regarding the proper handling and protection of patients' confidential medical information." Appellant's App. at 255. The essential elements for a negligence action are (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty. Pfenning v. Lineman, 947 N.E.2d 392, 398 (Ind. 2011). Here, St. Vincent's sole contention in support of summary judgment on this issue was that J.H. could not prove that its conduct proximately caused his alleged injuries absent expert testimony.

Summary judgment is appropriate when the undisputed material evidence negates one element of a claim. Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004). In support of its summary judgment motion, St. Vincent designated undisputed evidence showing that J.H. has a pre-existing mental illness. And J.H.'s complaint alleges the following regarding his injuries:

> [J.H.] has suffered embarrassment, humiliation, pain and mental anguish; he has lost standing among his other family members, which causes him additional stress and mental anguish. As a result of all of these factors, [J.H.]'s condition has worsened and he is emotionally weaker and more fragile and subject to increased risk of other episodes relating to his bipolar disorder.

Appellant's App. at 254. Accordingly, at the summary judgment hearing, St. Vincent argued that, under Daub v. Daub, 629 N.E.2d 873, 877-78 (Ind. Ct. App. 1994), trans.

11

denied, the question of the causal connection between an injury and a pre-existing affliction or condition is a complicated medical question requiring expert testimony, and J.H. had failed to present expert testimony to prove the proximate cause element of his negligence claim.[4]

But it is well-settled that merely alleging that the plaintiff has failed to produce evidence on each element of a claim is insufficient to entitle the defendant to summary judgment under Indiana law. See Jarboe, 644 N.E.2d at 123. As our supreme court recently reiterated, "while federal practice permits the moving party to merely show that the party carrying the burden of proof [at trial] lacks evidence on a necessary element, we impose a more onerous burden:  to affirmatively 'negate an opponent's claim.'" Hughley, 15 N.E.3d at 1003 (quoting Jarboe, 644 N.E.2d at 123). Here, St. Vincent's designated evidence and argument in support of summary judgment on J.H.'s negligence claim does nothing more than point out that J.H. lacked evidence on the proximate cause element. St. Vincent did not designate an affidavit, expert opinion, or other evidence to affirmatively negate J.H.'s claim. Accordingly, St. Vincent did not make a prima facie showing that there are no genuine issues of fact and that it is entitled to judgment as a matter of law on J.H.'s negligence claim. See Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1270 (Ind. 2009).

---

[4] St. Vincent also argued that J.H. was required to show that he sustained a "direct impact" to substantiate his alleged emotional injuries. Appellant's App. at 33. But St. Vincent confuses case law regarding the negligent infliction of emotional distress, where proof of a direct impact is required, with that regarding negligence, where no proof of a direct impact is required.

Intentional Infliction of Emotional Distress

Finally, J.H. contends that there exists a genuine issue of material fact precluding summary judgment on his intentional infliction of emotional distress ("IIED") claim. Intentional infliction of emotional distress is committed by one who, by extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another. Ledbetter v. Ross, 725 N.E.2d 120, 123 (Ind. Ct. App. 2000). The intent to harm emotionally constitutes the basis of the tort. Id. at 124. Thus, the elements of the tort are a defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another. Bradley v. Hall, 720 N.E.2d 747, 752 (Ind. Ct. App. 1999).

In Curry v. Whitaker, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011), this court observed that:

> [t]he requirements to prove this tort are "rigorous." [Cullison v. Medley, 570 N.E.2d 27, 31 (Ind. 1991)]. We quoted the following comment from the Restatement with approval in Bradley v. Hall:
>
> > The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

13

720 N.E.2d [at] 752-53 . . . (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). IIED is found where conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind. Lindsey[v. DeGroot, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009)]. In the appropriate case, the question can be decided as a matter of law. Id.

In support of summary judgment on this issue, St. Vincent designated evidence showing that it contacted E.H. to inform her that J.H. had been admitted to the Stress Center and he was safe. St. Vincent maintains that, as a matter of law, this conduct was not extreme or outrageous and did not intentionally or recklessly cause J.H. severe emotional distress. In opposition to summary judgment, J.H. argued that St. Vincent's conduct was outrageous and that it recklessly caused him severe emotional distress. In particular, J.H. points out that he expressly told St. Vincent that he did not want his family members to know about his mental illness and only provided E.H.'s contact information on the assurance that it would be used only in case of an emergency, such as a heart attack. Given the unfortunate stigma associated with mental illness in our society, and given that J.H. made his wishes expressly known, J.H. maintains that St. Vincent's conduct was outrageous and caused him severe emotional distress.

Construing the designated evidence and the facts in a light most favorable to J.H., and mindful of St. Vincent's denial of any intentional infliction of emotional distress to J.H., we hold that there is a genuine issue of material fact whether St. Vincent's conduct was so outrageous that it satisfies the reckless element of the tort. Comment i to the Restatement states that IIED may be found where the actor knows that severe emotional distress is certain, or substantially certain, to result from his conduct and where he acts

14

recklessly, or in deliberate disregard of a high degree of probability that the emotional distress will follow. Id. Further,

> The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.

Restatement (Second) of Torts § 46 cmt. f (1965).

Here, J.H. entrusted St. Vincent with treating him for a mental illness. The designated evidence supports a reasonable inference that St. Vincent, with actual knowledge both that J.H. was experiencing a mental health crisis and that he did not want his family to know about his condition, recklessly inflicted severe emotional distress[5] on J.H. when it contacted E.H. We reach this conclusion mindful of both the Stress Center's status as a mental health care provider with specialized knowledge and with particular knowledge of J.H.'s fragile mental state and his insistence on privacy, but also without considering whether J.H. is likely to prevail on this issue at trial. See Hughley, 15 N.E.3d at 1003-04 (observing summary judgment is not appropriate merely because the non-movant appears unlikely to prevail at trial). Accordingly, as there is a genuine issue of material fact, St. Vincent was not entitled to summary judgment on J.H.'s claim for intentional infliction of emotional distress.

---

[5] To the extent St. Vincent claims that J.H. cannot prove that he sustained severe emotional distress sufficient to sustain an IIED claim, St. Vincent has not made a prima facie showing to affirmatively negate that element of J.H.'s claim. See Hughley, 15 N.E.3d at 1003 (quoting Jarboe, 644 N.E.2d at 123).

<u>Conclusion</u>

St. Vincent is entitled to summary judgment on J.H.'s claim alleging invasion of privacy by public disclosure. But the trial court erred when it granted summary judgment in favor of St. Vincent on J.H.'s claims alleging breach of statutory duty, negligence, and IIED. With respect to the breach of statutory duty claim, St. Vincent did not make a prima facie showing that J.H. had consented to its communication with E.H. or that its alleged breach was excused. With respect to the negligence claim, St. Vincent did not make a prima facie showing to affirmatively negate the proximate cause element of J.H.'s claim. And we hold that genuine issues of material fact preclude summary judgment on J.H.'s IIED claim.

Affirmed in part, reversed in part, and remanded for further proceedings.

BAILEY, J., and PYLE, J., concur.