## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 24 2017, 8:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Neal F. Eggeson, Jr.
Eggeson Appellate Services
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey C. Gerish
Plunkett Clooney
Bloomfield Hills, Michigan

Pamela A. Paige
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jessica Mataranglo,

*Appellant-Plaintiff,*

v.

Meijer Stores Limited Partnership and Shannon Fuentes-LaCross,

*Appellees-Defendants*

January 24, 2017

Court of Appeals Case No.
71A03-1604-CT-849

Appeal from the St. Joseph Circuit Court

The Honorable Michael G. Gotsch, Judge

Trial Court Cause No.
71C01-1410-CT-394

**Mathias, Judge.**

[1] Jessica Mataranglo ("Mataranglo") appeals the St. Joseph Circuit Court's entry of partial summary judgment in favor of Meijer Stores Limited Partnership

("Meijer") on Mataranglo's claims that Meijer is liable for pharmacist Shannon Fuentes-LaCross's ("LaCross") acts of negligence and invasion of privacy under the theory of respondeat superior. LaCross and Meijer (collectively "the Defendants") cross appeal and argue that they are entitled to judgment as a matter of law on Mataranglo's claims of negligence and invasion of privacy.

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

In 2014, LaCross was a pharmacist at a Meijer Pharmacy in Mishawaka, Indiana. Mataranglo was a customer of the pharmacy, and on March 22, 2014, she took a prescription to the Meijer Pharmacy to have it filled. Mataranglo gave her prescription to LaCross, with whom she had been acquainted for a few years because the two women had a mutual ex-boyfriend, Scott Geisler ("Geisler").

On March 23 or 24, 2014, LaCross allegedly divulged Mataranglo's prescription information to Geisler. On March 24, Geisler spoke with Mataranglo. Geisler stated that LaCross gave him information about Mataranglo's prescription and told Geisler that Mataranglo was "with a black guy." Appellant's App. p. 168. Geisler told LaCross that the man was Mataranglo's boyfriend. When Mataranglo stated she was going to report LaCross for sharing her private information, Geisler asked her to not do so.

[5] The following month when Mataranglo refilled her prescription at the Meijer Pharmacy, LaCross was working at the pharmacy counter. Mataranglo became angry when she saw LaCross and reported to the on-duty pharmacist that LaCross had shared her prescription information with Geisler. Mataranglo discussed the incident with another Meijer employee that same day. LaCross told Geisler that she had been reported for sharing Mataranglo's prescription information.

[6] LaCross's supervisor discussed Mataranglo's report with her, and LaCross denied the allegation. No record of the incident is in LaCross's personal file.

[7] On October 31, 2014, Mataranglo filed a complaint against LaCross and Meijer in St. Joseph Circuit Court. Mataranaglo alleged that LaCross was liable for negligence and invasion of privacy, and Meijer was also liable for LaCross's alleged acts under a theory of respondeat superior. Mataranglo claimed that Meijer was directly liable for negligent training, supervision, and retention.

[8] Meijer agreed that LaCross's alleged acts were done in the course and scope of her employment with Meijer, but the Defendants argued that they were entitled to summary judgment on Martaranglo's claims. In April 2016, the trial court denied LaCross's motion for summary judgment but entered summary judgment in favor of Meijer.

[9] Mataranglo appeals the trial court's entry of summary judgment in favor of Meijer on all claims. The Defendants cross-appeal and argue that the trial court

erred when it denied LaCross's motion for summary judgment on Mataranglo's negligence and invasion of privacy claims.

## Standard of Review

Pursuant to Indiana Trial Rule 56(C), "[s]ummary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 301 (Ind. Ct. App. 2015). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Devereux v. Love*, 30 N.E.3d 754, 762 (Ind. Ct. App. 2015), *trans. denied*. "If the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts." *Id*. We review pure questions of law de novo. *Id*.

## Procedural Claims

Mataranglo argues that our court lacks jurisdiction over the Defendants' cross-appeal because she was not given the opportunity to respond to the Defendants' motion to certify the order denying summary judgment to LaCross. However, Mataranglo has not cited any persuasive authority to support her position, and Appellate Rule 14(B), which governs interlocutory appeals, has no provision requiring the trial court to allow for a response before jurisdiction vests with this court.

[12]     Mataranglo also argues that Defendants should not be permitted to challenge the admissibility of Scott Geisler's affidavit in their cross-appeal because the trial court ruled on the motion to strike in a separate order. The Defendants did not seek certification of the order denying the motion to strike pursuant to Appellate Rule 14(B). Generally, only issues that were properly raised in the trial court in ruling on the certified interlocutory order are available on interlocutory appeal. *Harbour v. Arelco*, 678 N.E.2d 381, 386 (Ind. 1997).

[13]     However, the trial court's consideration of Geisler's affidavit in ruling on the motion for summary judgment is inexorably tied to the issue presented in this appeal. Indiana Trial Rule 56(E) provides in relevant part that affidavits submitted in support of or in opposition to a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "The requirements of T.R. 56(E) are mandatory—therefore, a court considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits." *Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind. Ct. App. 2005) (citing *Interstate Auction, Inc. v. Cent. Nat'l Ins. Group, Inc.*, 448 N.E.2d 1094, 1101 (Ind. Ct. App. 1983)). In accordance with Rule 56(E) and the interests of judicial economy, we will consider the merits of the Defendant's argument that Geisler's affidavit should not have been considered in ruling on the Defendant's motion for summary judgment.

## The Trial Court's Denial of Summary Judgment to LaCross

[14]   In their cross-appeal, the Defendants argue that the trial court erred when it determined that genuine issues of material fact precluded the entry of summary judgment in favor of LaCross. Specifically, the Defendants contend that their "designated evidence proved the absence of a genuine issue of material fact as to whether LaCross conveyed" Mataranglo's prescription information to Geisler. Cross-Appellants'/Appellees' Br. at 17.

[15]   First, we observe that negligence is comprised of three elements: (1) a duty on the part of the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff resulting from the breach. *Kolozsvari v. Doe*, 943 N.E.2d 823, 826 (Ind. Ct. App. 2011). Our courts and General Assembly have recognized a relationship between a pharmacist and her customer that gives rise to a duty on the pharmacist's part. *See Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 517 (Ind. 1994); Ind. Code § 25-26-13-15(a) ("A pharmacist shall hold in strictest confidence all prescriptions, drug orders, records, and patient information."). In this appeal, the parties argue whether genuine issues of material fact exist concerning LaCross's alleged breach of her duty.

[16]   In support of LaCross's motion for summary judgment, the Defendants designated: 1) LaCross's affidavit wherein she swore she did not disclose Mataranglo's prescription information to Geisler; 2) Geisler's deposition testimony wherein he testified that he knew that Mataranglo had prescription medication, but he could not recall who gave him the information and did not believe he received it from LaCross; and 3) phone records establishing that

LaCross did not send a text message to Geisler during the dates during which Mataranglo's prescription information was allegedly conveyed to Geisler.

[17] Mataranglo responded by designating Geisler's affidavit executed prior to his deposition testimony, in which Geisler stated that LaCross shared "confidential information regarding the prescriptions of Meijer Pharmacy customers[.]" Confidential Appellant's App. p. 167. Geisler also averred that on March 23 or 24, 2014, LaCross told him that Mataranglo "dropped off a prescription for [redacted] at the Meijer Pharmacy." *Id.* at 168. Geisler stated that on March 24, he "phoned" Mataranglo, asked her about her prescription, but also asked her not to report LaCross for disclosing Mataranglo's prescription information. *Id.*

[18] Mataranglo also designated her own affidavit stating that she and LaCross were acquainted with each other and that she had her prescription filled at the Meijer Pharmacy by LaCross on March 22, 2014. Mataranglo averred that on March 24, 2014, she "received a phone call from Scott Geisler pertaining to" her prescription. *Id.* at 160. Approximately one month later, Mataranglo saw LaCross working at the Meijer Pharmacy counter and reported that LaCross had disclosed her prescription information to Geisler.

[19] From the parties' designated evidence, we conclude that a genuine issue of material fact exists. It is within the exclusive province of the fact-finder to determine whether LaCross disclosed Mataranglo's prescription information to Geisler.

[20] The Defendants argue that our court should not consider Geisler's affidavit because in his subsequent deposition testimony Geisler testified that he knew that Mataranglo had prescription medication, could not recall who gave him the information, but did not believe he received it from LaCross. The Defendants rely on *Gadboury v. Ireland Road Grace Brethren*, 446 N.E.2d 1310 (Ind. 1983), in which our supreme court adopted the following statement of law:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Id*. at 1314 (citations omitted); *see also Bunger v. Brooks*, 12 N.E.3d 275, 279-80 (Ind. Ct. App. 2014), *trans. denied*.

[21] The *Gadboury* court also held that "contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant." 446 N.E.2d at 1314 (citation omitted). The stated purpose for this rule is to "prevent a party from generating its own genuine issue of material fact by providing self-serving contradictory statements without explanation." *Crawfordsville Square, LLC. v. Monroe Guar. Ins. Co.*, 906 N.E.2d 934, 939 (Ind. Ct. App. 2009).

[22] The circumstances in this case do not fall squarely within the *Gadboury* rule. Importantly, Geisler is a non-party, and he executed his affidavit approximately nine months prior to his deposition testimony. Also, Geisler's later deposition testimony conflicts with his earlier sworn affidavit in only one significant respect: in his affidavit Geisler swore that LaCross shared the prescription information with him; however, in his deposition, he testified that the information was disclosed to him, but he could not remember who divulged it, and he did not believe it was LaCross.

[23] The inconsistencies between Geisler's statements must be resolved by the fact-finder. Because Geisler is not a party in this litigation and his affidavit was "not crafted to contradict any then-existing testimony," the trial court properly considered the affidavit in making its determination that genuine issues of material fact precluded the entry of summary judgment in favor of LaCross. *See Smith v. Delta Tau Delta*, 9 N.E.3d 154, 158-59 (Ind. 2014).

[24] For all of these reasons, we conclude that the trial court properly denied LaCross's motion for summary judgment.

## Summary Judgment in Favor of Meijer on Mataranglo's Respondeat Superior and Direct Negligent Claims

[25] Mataranglo argues that the trial court's conclusion that genuine issues of material fact exist as to her claims against LaCross precludes the entry of summary judgment in favor of Meijer on those same claims. Mataranglo argues that Meijer is liable for LaCross's alleged acts of negligence and invasion

of privacy that were done within the course and scope of her employment under a theory of respondeat superior. She also claims that genuine issues of material fact preclude the entry of summary judgment on her direct claims against Meijer for negligent training, supervision, and retention.

## A. Vicarious Liability

Vicarious liability will be imposed upon an employer under the doctrine of respondeat superior "where the employee has inflicted harm while acting 'within the scope of employment.'" *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008). An employer is not held liable under the doctrine of respondeat superior because it did anything wrong, but "because of the [employer's] relationship to the wrongdoer." *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 107 (Ind. Ct. App. 2014) (quoting *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 148 (Ind. 1999)).

If a fact-finder determines that pharmacist LaCross, while acting within the scope of her employment, filled Mataranglo's prescription and subsequently disclosed that information to Geisler, Meijer can also be held liable for LaCross' wrongful act. *See Knighten v. East Chicago Housing Authority*, 45 N.E.3d 788, 791 (Ind. 2015). Therefore, the trial court erred when it granted summary judgment in favor of Meijer on Mataranglo's claim that Meijer is liable for LaCross's alleged negligence under the doctrine of respondeate superior.

## B. Direct Liability Claims

In her complaint, Mataranglo alleged that Meijer negligently trained, supervised, and retained LaCross. Mataranglo argues that the trial court

improperly granted summary judgment for Meijer on these claims because Meijer did not designate evidence to establish that it is entitled to judgment as a matter of law.

[29] Meijer designated evidence that LaCross knew she had a duty not to disclose confidential information. Specifically, Meijer submitted copies of text messages that LaCross sent to Geisler after Mataranglo reported to Meijer that LaCross had disclosed her prescription information. Appellant's App. pp. 108-09. In the messages, LaCross states that she is "bound by HIPPA" and would never divulge a customer's prescription medication. *Id.*

[30] Of course, a fact-finder must weigh this evidence against the evidence that Geisler knew Mataranglo's prescription information, which he allegedly obtained from LaCross. Importantly, Meijer did not designate evidence concerning how its pharmacists are trained. Also, Meijer did not designate any evidence concerning the steps it took to investigate Mataranglo's claim that LaCross disclosed her prescription information. In responding to Mataranglo's arguments, the Defendants continually rely on their general denial of Mataranglo's allegations.[1]

[31] Although federal practice permits the moving party to merely show that the party carrying the burden of proof at trial lacks evidence on a necessary

---

[1] To support its argument that we should affirm the grant of summary judgment it its favor, Meijer heavily relies on its unsuccessful argument that Geisler "recanted" his affidavit when he gave subsequent, inconsistent deposition testimony.

element, Indiana state courts impose a more onerous burden: to affirmatively "negate an opponent's claim." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (citation omitted). Meijer's designated evidence and argument in support of summary judgment on Mataranglo's negligent training, supervision, and retention claims do not affirmatively negate Mataranglo's claim. Therefore, Meijer failed to make a prima facie showing that there are no genuine issues of fact and that it is entitled to judgment as a matter of law. *See Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1270 (Ind. 2009).

## Public Disclosure of Private Facts

[32] Finally, we address Mataranglo's claim that the trial court improperly granted summary judgment to the Defendants on her claim for invasion of privacy, and specifically, public disclosure of private facts.[2] This tort, described by the Second Restatement, occurs when a person gives "'publicity'" to a matter that concerns the "'private life'" of another, a matter that would be "'highly offensive'" to a reasonable person and that is not of legitimate public concern. *J.H. v. St. Vincent Hosp. & Health Care Center, Inc.*, 19 N.E.3d 811, 815 (Ind. Ct. App. 2014) (citing *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 684 (Ind. 1997) (quoting Restatement (Second) of Torts § 652D))).

---

[2] Judge Crone recently observed that whether "Indiana recognizes this tort is technically an open question, but for all practical purposes the answer is currently no." *Robbins v. Trustees of Ind. Univ.*, 45 N.E.3d 1, 13 (Ind. Ct. App. 2015) (Crone, J., concurring). Because it is not necessary for us to comment on the viability of the tort to resolve the issue presented on appeal, we decline to do so.

As explained in *Doe*, under the Restatement view adopted by most courts, a communication to a single person or to a small group of persons is not actionable because the publicity element requires communication to the public at large or to so many persons that the matter is "'substantially certain to become one of public knowledge.'" 690 N.E.2d at 692 (quoting Restatement (Second) of Torts § 652D cmt. a); *see also Munsell v. Hambright*, 776 N.E.2d 1272, 1282 (Ind. Ct. App. 2002) (holding that the defendants would not have been entitled to summary judgment if the tort were recognized under Indiana law because the disclosure of private information to "two co-workers does not satisfy the publicity requirement").

Assuming for the sake of argument that Indiana recognizes the tort, the Defendants are entitled to summary judgment on this claim. Mataranglo has alleged and designated evidence, which if proven to be true, would establish that LaCross disclosed her private prescription information to only one person: Geisler. Therefore, Mataranglo has not alleged facts that would satisfy the "publicity element" of the tort. *See Doe*, 690 N.E.2d at 692. Accordingly, we affirm the trial court's grant of summary judgment to the Defendants on Mataranglo's public disclosure of private facts claim.

## Conclusion

The trial court properly granted summary judgment to the Defendants on Mataranglo's public disclosure of private facts claim. Still, genuine issues of material fact preclude the entry of summary judgment on Mataranglo's remaining claims. Therefore, we affirm the trial court's order denying summary

judgment to LaCross, but we reverse the trial court's order granting summary judgment to Meijer.

[36]     Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.


Robb, J., and Brown, J., concur.